ADKINS *et al. vs.* HUTCHINGS, administrator.*

1. From the manner in which the record in this case was made up, and the exceedingly bad handwriting of the person who copied the brief of evidence, this court cannot ascertain whether or not the jury found contrary to the evidence; and as the judgment is reversed on other grounds, no opinion is expressed thereon.

2. Where a bill was filed by the children of an intestate, claiming that his administrator was guilty of a *devastavit*, in that he received a large number of accounts which were solvent and could have been collected, but failed to collect many of them, it was admissible for the defendant to introduce in evidence the tax returns of the intestate for the two years preceding his death, showing that he returned for taxation in each of those years only $500. Such returns were admissible as admissions on the part of the intestate that the accounts were not solvent, and as showing the estimate which he placed upon their solvency.

3. Where the administrator of the intestate died, and the bill was filed against his administrator, alleging that the latter took into possession all of the property which the former administrator had received from the estate of the intestate, it was not admissible for the defendant to introduce in evidence *ex parte* affidavits of various persons in proof of accounts of the deponents against the intestate (two of such accounts having upon them receipts dated pending the last administration), and which were found by the present administrator in a trunk of the former administrator with papers connected with the estate of the intestate. It does not appear when these affidavits were made. They were *ex parte* and mere hearsay. The debtor being dead, the deponents would have been incompetent as witnesses to prove the accounts in a suit thereon. They were not introduced as witnesses as they should have been, so as to be cross-examined; and there being no evidence to show that the original administrator acted upon these

*This case was argued at the last term, and by order of the court reargued at the present term.

affidavits, they were not admissible on the question of diligence on his part.

4. Where a year's support has been allowed by the ordinary and the complainants already have judgment for the amount allowed, if it has not been paid, they have a right to have an execution issued and levied against the administrator; and there was no error in refusing to allow an amendment to a bill alleging a *devastavit* in failing to collect accounts of the intestate, so as to add a claim for the recovery of the balance of the year's support.

5. The inventory of notes and other choses in action is not of itself evidence of assets in hand so as to charge an administrator with a *devastavit* in failing to collect them, but he will be liable for a *devastavit* if he fails to collect such as are collectible with due care and proper diligence; and the burden is on the party setting up such claim to show that he failed to use such due care and diligence in making such collection.

6. Where discovery is not waived in the bill, and the court charges that the answer of the defendant, so far as responsive to the allegations of the bill is evidence in his favor, and would require the testimony of two witnesses, or of one witness and corroborating circumstances, to overcome it, and lays down the rule as to what is a responsive answer, this is sufficient; and it is not his duty to take the bill and answer and designate in detail what is responsive in the latter. If counsel desire to invoke the ruling of the court as to the responsive character of any particular part of the answer, they may do so, and the court will decide the point made and instruct the jury accordingly.

7. The eleventh ground of the motion for a new trial is disposed of by the fifth head-note above.

8. All open accounts made in the conduct of a business, unless otherwise agreed expressly or by implication, become due and payable at the end of the year for which they are made, and the statute of limitations does not begin to run until they are due. If four years had elapsed from the time such accounts became due to the death of the intestate, they would have been barred by the statute of limitations; but it was error to charge that all open accounts would be barred which had been created more than four years before the death of the intestate, and the estate would not be liable except for collections actually made.

January 9, 1888.

Records.    Administrators and Executors.    Evidence.
Witness.  Year's Support.  Amendment.  Charge of Court.
Equity.    Statute   of   Limitations.    Accounts.    Before

Judge BRANHAM. Polk Superior Court. August Term, 1886.

Reported in the decision.

I. F. THOMPSON; E. N. BROYLES, for plaintiffs in error.

W. F. TURNER, for defendant.

SIMMONS, Justice.

The complainants filed their bill in the court below, alleging that they were the children of Bryant Adkins, who died in 1871, leaving an estate worth $4,000, and that W. M. Hutchings was appointed his administrator in November, 1871, and took possession of all of said estate and made an inventory and appraisement thereof and a return of a great many open accounts, amounting to $2,705. W. M. Hutchings, the administrator, died in August, 1878, and John Hutchings, in October, 1878, qualified as administrator on the estate of said W. M. Hutchings, and took into possession all the property which the former administrator had received from the estate of Adkins. The bill further alleges that the administrator was guilty of a *devastavit*, because he had not collected a great many of these accounts, which they alleged were solvent at the time they were received by him.

The defendant answered the bill, and claimed that a large portion of these accounts were barred by the statute of limitations when they came into the hands of the administrator; and made further answer to the bill, which is unnecessary to mention for the purposes of this decision. Upon the trial of the case, the jury found in favor of the defendant. The complainants made a motion for a new trial upon the various grounds set out therein, which motion was overruled by the court, and movants excepted.

1. The first three grounds are the usual ones, that the jury found contrary to the evidence, to the weight of evi-

dence, and contrary to law. We have looked carefully into this record, and are unable to ascertain from the record whether these grounds are true or not. The testimony shows that open accounts to the amount of $2,705 were returned by the administrator in his inventory and appraisement. These accounts ranged in amounts from twenty-five cents to fifty dollars, and upwards. It was insisted by the complainants that a great number of them were solvent and could have been collected by the exercise of due care and diligence on the part of the administrator. A great deal of testimony was introduced by the complainants to this effect. It was also insisted by the complainants that the administrator had collected a considerable portion of them and had failed to account for the same. The defendant claimed that a large portion of them were barred by the statute of limitations when they came into the hands of the first administrator, and that a large portion were insolvent at that time. The defendant also claimed that the first administrator, his intestate, had paid out much more for the estate than the complainants had proved he had collected and not accounted for.

From the manner in which this record was made up, and the exceedingly bad handwriting of the person who copied the brief of evidence, it is impossible for us to determine whether the jury found contrary to the evidence or not, without devoting to it much more time than we can afford in view of the great press of business upon us; and as the case is to be sent back on account of errors committed by the court in his charge to the jury, we forbear making any further comment upon these grounds.

2. The 4th ground of the motion is, that the court erred in admitting in evidence the tax books of Polk county, showing the tax returns of Bryant Adkins for the years 1869 and 1870, which tax returns showed that Adkins, the intestate, returned for taxes in each of these years the sum of $500. There was no error in the court's admitting these tax returns for the purpose for which they were ad-

mitted.   The contention between the parties was as to the solvency or insolvency of these open accounts before alluded to.   The complainants claimed under Adkins, and the tax returns were admissions, on his part, that the accounts in controversy were not solvent.   They were, therefore, admissible as admissions of this fact, and as showing the estimate which Adkins placed upon the solvency of these accounts.

The same reasons will apply to the exceptions taken in the fifth ground, upon the charge of the court to the jury upon said tax returns.

3. In the sixth ground, the complainants except because the court allowed the defendants to put in evidence affidavits of C. M. Wheeler, Wm. Wheeler, Snow, Bowman, Saunders, Gardner, Hacking, Thurman and Caldwell.   It appears from the record that these affidavits were in proof of accounts of the deponents against Adkins, the intestate, and were found by John Hutchings, the present administrator, in a trunk of the former administrator, with papers connected with the Adkins estate.   The record does not disclose at what time the affidavits were made. On the accounts of Snow and Gardner are receipts dated in 1883.   We think the court erred in admitting these affidavits as evidence.   They were *ex parte*, and were merely hearsay; and there was no evidence to show that W. M. Hutchings, the administrator, ever acted upon them. Adkins being dead, the parties who made the affidavits in proof of their accounts would have been incompetent witnesses to prove the accounts, in case suit had been brought thereon.   If these persons were living at the time of the trial, the defendant should have introduced them, so that they could have been cross-examined by the complainants' counsel.   It is true that the court charged the jury that they were not evidence of payment, but were admitted on the question of diligence on the part of the administrator; and, as we have said before, there is no

proof to show that the administrator acted upon these affidavits.

4. The seventh ground of the motion is, that the court refused to allow an amendment to the bill, offered during the progress of the trial. The amendment sought to recover the balance of the year's support which had been set aside for the minor children at the time of the death of Adkins. There was no error in refusing to allow this amendment. The year's support had been allowed and approved by the ordinary of the county, and the complainants already had a judgment for that amount, and if it was not paid, they had a right to have an execution issued and levied against the administrator. It was, therefore, unnecessary to complicate the case by adding this amendment and this cause of action to the bill. The court did right in rejecting the amendment.

The court did right in charging the jury, as complained of in the 8th ground, that these complainants could not recover in this suit the balance of the year's support set apart to the family.

5. The 9th ground is, that the court erred in charging the jury that the defendant could not be held liable for any accounts or notes included in the inventory returned by W. M. Hutchings, the former administrator, unless it was shown by the evidence that the former administrator collected the same, or that he could have collected the same by the exercise of due care and proper diligence; and that the burden was on the plaintiffs to show this. It was insisted by counsel for the plaintiff in error that the fact of the return of these notes and accounts in his inventory and appraisement was sufficient to charge him with their value, and that the burden of proof was on the administrator to show that they were not collectible. We think that the rule laid down by the court was the proper rule. The inventory of notes and other choses in action is not of itself evidence of assets in hand to charge an administrator, but he will be liable for a *devastavit* if he

fails to collect such as are collectible with due care and proper diligence; and we think the burden is on the complainants to show that he failed to use due care and diligence in collecting the accounts. *Hall vs. Carter and Kenan,* 8 *Ga.* 388.

6. The 10th ground complains that the court charged the jury that, discovery not being waived in the bill, the answer of the defendant, so far as the same is responsive to the allegations in the bill, was evidence in his favor, and would require the testimony of two witnesses, or of one witness and corroborating circumstances, to overcome the same; the objection to said charge being that no part of said answer is responsive, and that the court failed to point out to the jury what part of the answer was responsive and what part was not responsive to the bill. There was no error in this charge as complained of by the plaintiff in error. Some parts of the answer were responsive to the bill. The exception to this part of the charge does not complain that the court did not define what was responsive in the answer, and we therefore presume that the court instructed the jury as to what was a responsive answer. The complaint is that he did not pick out certain parts of the answer, and say this was responsive and the other not responsive; we do not think it is the duty of the court to do this, unless specially requested by counsel. This court, as early as 14 *Ga.* in *Webb vs. Robinson,* p. 216, laid down this rule upon the subject: " Generally, the duty of the court in this particular is discharged when it instructs the jury that only so much of the answer is to be regarded as evidence as is responsive to the allegations in the bill, and lays down the rule as to what is a responsive answer. It is not the duty of the court, upon request of counsel, to take the bill and answer, and going through both, to designate in detail what is responsive. But when counsel choose to do so, they may make a point to the court as to the responsive character of any particular part of the answer, and when made, it is the business of the court to

decide it and instruct the jury accordingly. There is no impracticability in this rule. Self-respect will restrain counsel from making unnecessary points upon the answer, and when real doubts exist whether an answer be responsive, the doubts are for the solution of the court, and not the jury."

It is true that this court, in *Stanford vs. Murphy, administrator,* 63 *Ga.* 410, held that it was the duty of the judge to point out what parts of the answer are responsive to the bill; but in *Harris, trustee, vs. Collins,* 75 *Ga.* 97, this court held that this decision did not modify or change in the least degree the rule as laid down in 14 *Ga. supra.* We think that counsel owe some duties to the court in pointing out what is responsive and what is not responsive in an answer; and if they wish particular parts of the answer pointed out as responsive to the bill, they should call the attention of the court thereto and ask the court specially to call the attention of the jury to such parts as they consider responsive. It would be a great burden upon the judges of the superior courts to require them, in their charges to the jury, to read all the allegations in the bill and then read the answer and point out to the jury what is responsive and what is not responsive.

7. We have disposed of the 11th ground in our comments on the 9th ground.

8. The 12th ground is, " Because the court charged the jury that Bryant Adkins, having died in 1871, all open accounts would be barred by the statute of limitations, that had been created more than four years before the death of said Bryant Adkins and the estate would not be liable, except for collections actually made." The effect of this charge was to instruct the jury that the statute of limitations began to run on these accounts from the day they were made, and that if four years had elapsed from that day or from the time they were created, they were barred by the statute. We do not understand this to be the law. All open accounts, unless otherwise agreed, made in the

conduct of a business, expressly or by implication become due and payable at the end of the year for which they are made, and the statute does not begin to run until they are due; and if four years had elapsed from the time they became due to the death of the intestate, then they would have been barred by the statute of limitations. Code, §§2057, 2918. We think, therefore, that the court erred in the charges complained of.

Judgment reversed.