12871

GRAMLING ELECTRIC REFRIGERATION, INC., v. SOUTHERN RY. CO.

(152 S. E., 670)

*Messrs. Adam H. Moss,* and *Frank G. Tompkins,* for appellant,

*Mr. John S. Bowman,* for respondent,

March 26, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for damages, $77.70, the value of an electric refrigerator, received by the defendant in Atlanta, Ga., for shipment by the General Electric Company, to itself at Orangeburg, S. C. It was what is known as an "order notify" shipment; the intended consignee being the plaintiff

Gramling Electric Refrigeration, Inc. The refrigerator was crated so that its condition could not be ascertained by inspection. The crate was in apparent good condition, and was receipted for by the defendant carrier as in that condition, "contents and condition of contents unknown."

Quoting from the transcript of record: "In due time the crate in which the refrigerator cabinet was concealed arrived in Orangeburg over the line of the Southern Railway Company, the only carrier handling it, and was delivered to Mr. R. G. Gramling, president and sole owner of Gramling Electric Refrigeration, Inc., in apparently the same condition as it was in when delivered to the Southern Railway Company in Atlanta. There were no bruises on the crate, not even a scratch, and no evidence of rough handling could be found. It was then carefully loaded on a truck and carried by a careful driver over a good road to Cameron, a distance around ten miles, and there opened. When the refrigerator cabinet was unpacked, so that it could be seen and examined, it was found to be damaged beyond repair."

The transcript contains also this statement: "The refrigerator cabinet was crated at the factory in Schenectady, N. Y., shipped from there to New York City by rail, from New York City via Clyde Line to Jacksonville, where it was delivered to the Florida Electric Company, and from Jacksonville it was sent, presumably by rail, to Atlanta, where it was received by General Electric Company and stored in its warehouse in the original crate as it came from the factory. It remained in this warehouse indefinitely, until it was taken out and delivered to Southern Railway Company for shipment to Orangeburg in the same original crate as it came and was stored in this warehouse."

The case was tried by his Honor, Judge Moss, of the County Court of Orangeburg County, and a jury. The plaintiff offered no evidence of the condition of the crate and contents as of the time the shipment was delivered to the Southern Railway Company in Atlanta for transporta-

tion to Orangeburg, except the testimony of a witness who supervised the crating in Schenectady, N. Y., some indefinite time before the shipment in question from Atlanta to Orangeburg. His testimony tended to show that the refrigerator was at that time in good condition, properly crated, and delivered to the New York Central Railroad Company for transportation via New York City and the Clyde Steamship Line to Jacksonville, Fla. It was consigned and delivered to a subsidiary company at Jacksonville. There is no testimony as to its condition in Jacksonville or how long it remained there. From Jacksonville it was shipped over certain other lines of railroad to the General Electric Company in Atlanta. There is testimony tending to show that it was received in Atlanta as originally crated in Schenectady, with no marks indicating injury to the crate or to the refrigerator. It was stored in the warehouse in Atlanta; for how long does not appear. As long as it remained there, no examination of the contents of the crate appears to have been made, and could not have been made without removing the refrigerator from the crate which was not done. It was delivered to the railroad company for shipment in apparently the same condition as it left the factory in Schenectady. When the shipment arived in Orangeburg, it was delivered to the Gramling Company, still with no marks upon the crate indicating possible injury to the contents and was hauled in a truck some ten miles to Cameron, where it was to have been delivered to a purchaser. The evidence tends to show that there was no rough handling in this movement. When the crate was removed or opened at Cameron, it was found that the refrigerator was damaged beyond repair. The testimony is strangely silent as to the character and probable cause of the injury to the refrigerator, which would give some idea as to possibility of its having occurred by some act of the carrier which would leave no trace upon the crate.

At the conclusion of all of the testimony a motion was made for a directed verdict upon the grounds: (a) That

there is no testimony tending to show any injury or damage done to the refrigerator cabinet while it was in the possession of the defendant, or any of its agents or servants; and (b) that the defendant being the only carrier handling the cabinet, and there being no testimony whatsoever tending to show its condition when defendant received it, the presumption that it was damaged in transit cannot arise until it has first been shown that the cabinet was not in a damaged condition when defendant received it. This motion was refused.

After a charge by the presiding Judge, the jury returned a verdict in favor of the plaintiff for the full amount claimed, $77.70, and from the judgment entered thereon the defendant has appealed upon various exceptions.

The appeal turns virtually upon the soundness or otherwise of the following contentions of the appellant:

1. That the motion for a directed verdict should have been granted upon the ground that there was no evidence tending to show that the shipment was in good condition at the time it was delivered to the carrier in Atlanta.

2. That his Honor erred in charging the jury that a receipt by the carrier of a shipment "in apparent good order, contents and condition of contents unknown," raised a presumption that the shipment at the time of its receipt was in good order.

I. The principle announced in the case of *Willett v. R. Co.,* 66 S. C., 477, 45 S. E., 93, is logical and just, that when it appears that a shipment was in good order at the time of its delivery to a carrier for transportation, and was delivered to the consignee in a damaged condition, it will be presumed that the damage was caused by the delivering carrier. This rule applies equally to a case of transportation by initial and connecting carriers and to a case of transportation by a single carrier who is the initial, transporting, and delivering carrier. The primal element in the presumption is the delivery for shipment of a commodity

then in good condition. In the absence of evidence of this primal element the presumption cannot attach.

As is said in the *Willett case,* quoting from Hale on Bailments and Carriers: "In an action against the last carrier, if it is shown that the goods were delivered to the first carrier in good order, this condition, in the absence of a contrary showing, will be presumed to continue until the goods come into the possession of the last carrier, and that the injury occurred on that line."

See also the cases cited in *Copeland Co. v. Davis,* 125 S. C., 449, 119 S. E., 19, 20, which recognizes the authority of the *Willett case* specifically and the necessity of establishing the primal element supporting the presumption.

In the *Copeland case, supra,* the Court said: "If the goods are delivered to the consignee in a damaged condition, the fact that they were actually received by the first carrier is manifest. *The consignee, however, must show that their condition at that time was good.* * * * Upon evidence by the consignee of such condition or quantity when the goods were delivered to the first connecting carrier, and that when delivered to him they were either in a damaged condition or deficient in quantity, the presumption arises that the loss or damage occurred while in the possession of the delivering or terminal carrier."

If this had been a straight shipment from Schenectady to Orangeburg, the testimony of the witness at Schenectady that the refrigerator was in good condition when crated and delivered to the carrier there, would have been some evidence of the fact that it was in good condition when received by the defendant the terminal carrier. But the evidence is that the shipment was twice broken, at Jacksonville and Atlanta, and there is no evidence showing its condition at either point. It passed a long railroad trip from Schenectady to New York, a long sea voyage from New York to Jacksonville, a detention at Jacksonville for an indefinite period, a railroad trip from Jacksonville to Atlanta, and a detention

in Atlanta for an indefinite period. What happened to it along this interrupted journey and a lapse of considerable time is a matter of conjecture, as there is no evidence of its condition at any one of these various stages.

II. We think that the presiding Judge was clearly in error in charging the jury as referred to in the second contention above set forth. In demonstration, it is only necessary to cite the *Willett case*. There the Court said: "When damaged goods are received by a consignee with the cases unbroken, and with no damage disclosed by external inspection, there is no presumption that they were received by the first carrier in good condition, because the carrier is not supposed to open the cases in which the goods are concealed from view. * * * "

The charge would eliminate the effect of the limited character of the receipt "in apparent good order, etc." As is said in *Kelly v. R. Co.*, 84 S. C., 249, 66 S. E., 198, 199, 137 Am. St. Rep., 842: "The bill of lading acknowledged receipt of the flour by defendant 'in apparent good order.' While 'apparent good order' would ordinarily refer to the outward appearance of the goods, or to their receptacles, and not to hidden or concealed conditions. * * * "

In view of the necessity of establishing the primal elements of the presumption, above referred to, the charge permitted the jury to act upon an unjustifiable presumption upon which to mount the desired presumption. It permitted the jury to conclude that notwithstanding the express declaration in the bill of lading that to the carrier the shipment appeared to be in good order, but that it was ignorant of the contents or the condition of the contents, the carrier must have known *what it declared that it did not know*.

Inasmuch as the reversal of the judgment below must be based upon a deficiency in the matter of proof and errors in the charge, it is but fair that instead of a nonsuit or a directed verdict a new trial should be had.

The judgment of this Court is that the judgment appealed from be reversed, and that the case be remanded for a new trial.

Mr. Chief Justice Watts and Messrs. Justices Stabler and Carter, concur.

Mr. Justice Blease (concurring in result) : I concur in the result of the opinion of Mr. Justice Cothran on the ground that I do not think there was *any evidence* favorable to the plaintiff's cause of action that the refrigerator was in good condition at the time of its delivery to the railroad company in Atlanta, Ga., as for some time prior to that delivery, the refrigerator was not in the hands of the delivering carrier, or of any of its connecting carriers. The damage to the refrigerator may have occurred between its receipt in Atlanta and the time of its delivery to the appellant, the delivering carrier. It was incumbent upon the plaintiff, as I understand the law, to show, under the circumstances, that a shipment of this kind was in good condition at the time of its delivery to the carrier, defendant.

Mr. Justice Stabler concurs.