## 21768. SLATER *v.* THE STATE.

DECIDED NOVEMBER 11, 1931.

*George G. McCoy,* for plaintiff in error.
*Walter C. Hartridge, solicitor-general, Julian Hartridge,* contra.

LUKE, J. The indictment in this case contains two counts,— the first count charging John Slater with breaking and entering the dwelling house of R. H. Jackson with intent to commit a larceny therein; and the second count charging the defendant with breaking and entering said dwelling house and stealing therefrom "one green dress of the value of $10, the property of Ella Jackson," and "one handkerchief of the value of 25 cents, the property of R. H. Jackson." The only question for determination is whether or not the trial judge erred in overruling the general grounds of the motion for a new trial.

R. H. Jackson testified that on the night of May 13, 1931, in Savannah, Chatham county, Georgia, while he and his wife, Ella, were away from home, some one burglarized his dwelling house, and took therefrom "all the wearing apparel, including an overcoat, spring coat, and dress." This witness further swore: "I have not seen that dress before. It was another one. Here it is. My wife is not up here; she is sick. Here is a handkerchief something like that. I don't know which stuff here is mine. . . My wife

identified this dress in my presence." On cross-examination, this witness swore: "This green dress here was identified by my wife down in police court. According to what she said, it belonged to her. She said it looked like her dress, she got it in New York. This is not mine. I could not furnish her the money to buy that. She was in New York and I was in Savannah. There is no name on the handkerchief. If I went to buy one, I could get the letter R on a handkerchief at any store. I identify the handkerchief according to the ones I had. I said the handkerchief looked just like mine. I got the handkerchiefs as a present—Christmas gift from my church. There were a couple of dozen handkerchiefs. I do not take stock, and I really would not swear that handkerchief belongs to me, but I say it looks just like mine. I admit that there are other handkerchiefs like that in circulation." Ella Jackson did not testify upon the trial of the case. L. F. Filia, sworn for the State, testified: "I am a member of the police force, and I arrested that man at 6:50 p. m., on May 18, 1931, at Augusta Road and Stiles Avenue. He had this bag in his possession, and was going down the road towards Savannah. He had all the stuff on that table. Rev. Jackson came to the office on the 18th and identified this green dress as belonging to his wife; and that is all he identified. The defendant said he bought the clothes in Florida and they belonged to his wife and he was going to Hardeeville. He was walking . . in the opposite direction from Hardeeville." On cross-examination this witness swore: "The green dress was all that was identified in police court, and was identified by Rev. Jackson and his wife, and several other witnesses. I don't know who the other witnesses were. . . I don't know anything about the actual committing of the burglary."

The gist of the testimony of Mattie Jenkins (a witness for the defense) is that she bought the dress alleged to have been taken by the defendant from Adler's, and was certain that it was her dress; that another dress exhibited to her belonged to her; that "all that stuff" did not belong to her—that "the handkerchiefs did not; and that the defendant, who was her brother-in-law, stole the clothes from her house. Charlie Jenkins testified substantially as did his wife, Mattie Jenkins.

The gist of the defendant's statement to the jury was that he got "these things" from Mattie Jenkins's house; that he bought "the

handkerchiefs and my underwear" from Dixie Pawnshop on Broughton, near Habersham;" and that "the balance there is Mattie's."

Evidently the defendant's conviction finally rests upon proof of his recent possession of one, or both, of the articles alleged to have been stolen. We have set out fully the testimony bearing upon this question, and shall repeat very little of it. The only evidence bearing directly upon the identity of the handkerchief comes from the mouth of R. H. Jackson. Jackson had two dozen handkerchiefs similar to the one alleged to have been stolen, but admitted that there were numerous other handkerchiefs like his, and positively refused to swear that the handkerchief exhibited to him was his handkerchief. Indeed, it does not clearly appear that any of Jackson's handkerchiefs were missing. He had not "taken stock." Of course the handkerchief had to be identified beyond a reasonable doubt, and we are satisfied that it was not so identified. It will be observed that there was no attempt to identify any of the other articles found in the defendant's possession except the green dress, and that the testimony in regard to the dress was pure hearsay. In this connection, see *Jordan* v. *State,* 119 *Ga.* 443 (2), 444 (46 S. E. 679). While in the case cited there was ample evidence to identify the stolen articles, the court used this significant language: "His counsel contends that the merchandise was of a character which could have been obtained at many other stores, and that it had no earmarks by which it could be identified, and that the evidence fails to show that it was the same as lost. And certainly, if the defendant had been found in possession of White Knight cigars alone, without anything further to connect them with those lost, the State's case would not have been made out."

It is perfectly apparent from the record that all the testimony tending to prove that the defendant was found in possession of the dress alleged to have been stolen was hearsay. "The rule is, that, while, in the absence of a proper exception to the evidence, a verdict will not be set aside on account of the erroneous admission of hearsay testimony, yet where the verdict is entirely unsupported except by such testimony, which is wholly without probative value, its introduction without objection will give it no weight or force in establishing the facts in issue. *Eastlick* v. *Southern Ry. Co.,* 116 *Ga.* 48 (42 S. E. 499); *Kemp* v. *Central of Ga. Ry. Co.,* 122

*Ga.* 559 (2), 560 (50 S. E. 465) ; *Miller* v. *McKenzie,* 126· *Ga.* 746 (55 S. E. 952). A new trial must therefore be granted, as the verdict was to this extent without evidence to support it." *Hale* v. *Hale,* 28 *Ga. App.* 509 (111 S. E. 740). See also *Berry* v. *Brunson,* 166 *Ga.* 523, 532. (143 S. E. 761), and cit. In this last opinion the court approved the ruling in *Eastlick* v. *So. Ry. Co.,* supra, in which it was held "that hearsay testimony is wholly without probative value, and that its introduction without objection does not give it any weight whatever in establishing a fact."

Our conclusion is that the defendant was not connected, by any competent evidence, with the offense charged, and that the trial judge erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*