## 28807. ACME FAST FREIGHT INCORPORATED *v.* SOUTHERN RAILWAY COMPANY.

DECIDED JULY 15, 1941. REHEARING DENIED JULY 31, 1941.

*Hugh G. Head Jr.,* for plaintiff.
*Neely, Marshall & Greene, W. O. Wilson,* for defendant.

BROYLES, C. J. Acme Fast Freight Inc. (hereinafter called "Acme") sued the Southern Railway Company (hereinafter called "the Southern") to recover $365.27, plus interest and costs of

court. The judge, sitting without the intervention of a jury, rendered judgment for the defendant; a motion for new trial was overruled and the plaintiff excepted. The petition contained the following allegations: On October 21, 1937, Acme received at New York City a shipment from the Rockland Clothing Company, consigned via Acme to Sam Saul, doing business as "The Fair," at Atlanta, Georgia. Said shipment consisted of two cartons. Acme delivered the shipment in New York City to the Pennsylvania Railroad, a common carrier. On route from that city to Atlanta, the shipment was transferred at Baltimore, Maryland, to the Southern, which carried the shipment from Baltimore to Atlanta, the Southern being the delivering connecting carrier of the shipment. Shortly after the shipment was delivered to Saul, the consignee, by the Southern, Saul discovered that one of the cartons had been pilfered, and its contents, consisting of clothing of the value of $298, had been removed. The shipment was delivered to Saul by the Southern on October 27, 1937. The stolen clothing was of the value of $298 at the time the shipment was consigned to the Pennsylvania Railroad. Saul refused to pay the Rockland Clothing Company for the stolen clothing, and that company sued him in the civil court of Fulton County and recovered a judgment in the sum of $353.77, and the judgment was paid by Saul. In that suit Acme was vouched into court by Saul, and the Southern was so vouched by Acme. Acme was then sued by Saul in the same court, and Saul obtained a judgment against Acme in the principal sum of $353.77, plus interest and costs, the total amount being $365.27, and that amount was paid to Saul by Acme. In that suit the Southern was vouched into court by Acme, and a copy of the notice of avouchment was attached as exhibit A to Acme's petition. A copy of the bill of lading on which the shipment moved from New York to Atlanta was attached to the petition as exhibit C. The Pennsylvania Railroad and the Southern received the shipment "as in good order." A copy of the notice of avouchment to the Southern by Acme in the suit against Saul was also attached to Acme's petition as exhibit B. The petition alleged that the Southern, being the common carrier over whose lines the shipment moved, and being the common carrier delivering it at its destination, and having been vouched into court, is concluded by the judgments in the two previous suits. The Southern in its answer admitted that

it had been vouched into court by Acme in the two previous suits, but denied any liability because of such avouchments. It also admitted that it delivered the shipment to Saul at Atlanta, but alleged that it delivered it "in the same condition as when it was received by this defendant. The contents of said shipment were concealed and this defendant had not then and does not now have knowledge as to the condition of said contents."

On the trial the evidence, including the through bill of lading, showed that Acme delivered the shipment in New York to the Pennsylvania Railroad and it was routed over that railroad to the Potomac Yards, and thence to the Southern at Baltimore, Maryland, the Southern being the delivering carrier at Atlanta, the destination of the shipment, and that the shipment was transferred from the freight-car in which it left New York to another freight-car on route, and that the shipment was on route three days over said railroads. The evidence further showed that the shipment, when delivered to the Pennsylvania Railroad weighed 164 pounds, and that when it was received by Saul in Atlanta it weighed 139 pounds. It was disclosed by the evidence that when Saul received the shipment there were no goods in one of the cartons, but only burlap bags, and that said carton "had the appearance of having been recoopered because of having two layers of tape sealing it." During the trial counsel for both parties entered into a stipulation "that the pilferage of the carton occurred in New York City and before the shipment was transferred by the Pennsylvania Railroad to the Southern Railway Company (which took place at Baltimore, Maryland)." Acme introduced in evidence all of the proceedings in the two previous suits, including the pleadings, the evidence, the judgments, and the two notices of avouchment to the Southern. The evidence further showed that before Acme delivered the shipment to the Pennsylvania Railroad, the shipment was kept by Acme for one night in a garage in New York City. It further appeared from the evidence that when Saul discovered that some of the clothing was missing from the shipment, he promptly notified the Southern of that fact, and that the Southern promptly sent one of its agents to Saul's store to investigate the matter.

In our opinion, under the facts of the case and the law applicable thereto, the judgments obtained in the two previous suits are conclusive against the Southern, and a verdict in favor of Acme

650

was demanded. In *Raleigh & Gaston Railroad Co.* v. *W. & A. R. Co.*, 6 *Ga. App.* 616 (65 S. E. 586), the first headnote reads as follows: "For one who is himself sued to have a right to vouch another into court, it is not enough that the vouchee is liable in some way to the voucher, but it must appear that the liability of the vouchee arises from the identical cause of action upon which the voucher is in danger of being held liable, *or that the ground of the liability arises from the same subject-matter."* (Italics ours.) And in that case (pp. 620-622) the court said: "The purpose of vouching is to enable the vouchee to come in and present any defense which would tend to relieve either himself or the voucher from liability in the action then pending. The object to be gained is an end of litigation; and if the act of the vouchee is the real thing complained of, so that if there is a recovery by the injured party against the voucher he can turn right around and claim indemnity from the vouchee, then it is to the interest of the State that a multiplicity of suits should be avoided by requiring the vouchee to appear in the original suit and set up any defense which he has. But before he can properly be vouched, the action between the injured party and the voucher must be of such a kind that the vouchee could set up therein any defense which he could set up if the suit were proceeding against him directly. . . In order for the principle embodied in this section of the Code [Code, § 38-624] to become applicable in any case, it must appear that the person vouched as responsible over is no longer to be regarded as a stranger to the action, for the substantial reason that he has the right to appear and defend, *and has the same means* of defeating recovery as if he were a real party upon the record, and that his rights of defense are such that he could not afterwards be heard to contest the justice of the claim, *having neglected to defend himself* [italics ours] in the action brought against a party whom he was bound to indemnify." See, to the same effect, *Brown* v. *Chaney*, 1 *Ga.* 410; *Bullock* v. *Winter*, 10 *Ga.* 214; *McArthur* v. *Ogletree*, 4 *Ga. App.* 429 (2) (61 S. E. 859); *Usry* v. *Hines-Yelton Co.*, 176 *Ga.* 660, 667 (168 S. E. 249); *Byne* v. *Americus*, 6 *Ga. App.* 48 (64 S. E. 285).

The fact that the Southern, although vouched, did not appear in court and filed no pleadings in either of the two previous suits, is immaterial. It could have appeared, and, as shown by the facts

of the case, could have set up in those suits the same defenses which it made in this case; and having neglected to defend itself in those suits, it can not now be heard to contest the justice of the claim. The Southern has had its day in court, and can not have another. *Bullock* v. *Winter,* supra; *Raleigh & Gaston R. Co.* v. *W. & A. R. Co.,* supra. It clearly appears from the evidence and the record that the ground of the liability of the vouchers in the two previous suits and the ground of the liability of the Southern in this suit arose from the same subject-matter—the shipment that'the Southern itself, as the delivering common carrier, delivered at its destination. Furthermore, the notices of the avouchments served upon the Southern specifically informed it that the claims against the vouchers were in regard to the pilfering of that same shipment. The Southern was no stranger to the subject-matter of the former suits, and those suits were "of such a kind" that the Southern could have set up therein the same defenses which it could have set up if it had been a party defendant to the suits. This being true, and the Southern, having been properly vouched into court, is concluded by the judgments in the'former suits, and a verdict for Acme was demanded by the law and the evidence. The cases cited in behalf of the Southern, which hold that the voucher "still has the burden of showing that the vouchee is responsible to him, and to do this will require allegation and proof of extrinsic matter unless the record in the former suits may suffice to establish such responsibility," are not in conflict with our present ruling, for the records in the two previous suits were sufficient to establish such responsibility against the Southern. Moreover, those cited cases did not deal with the controlling law in this case, to wit, that the judgment obtained against a voucher is conclusive against the vouchee as to the right of the plaintiff to recover the amount of the verdict rendered in the suit against the voucher, *and as to all defenses that either the voucher or the vouchee set up, or could have set up,* in the suit against the voucher. The court erred in rendering judgment for the Southern.

*Judgment reversed. MacIntyre and Gardner, JJ., concur.*

## ON MOTION FOR REHEARING.

BROYLES, C. J. It is alleged in the motion for a rehearing that the court, in rendering its decision, overlooked certain specified cases, and misapplied the decisions in those cases not overlooked.

652

We plead not guilty to the indictment. The cases that we are charged with overlooking were cited in the original brief of counsel for the Southern, and received our careful consideration, as is shown by the following excerpt from our opinion: "The fact that the Southern, although vouched, did not appear in court and filed no pleadings in either of the two previous suits is immaterial. It could have appeared, and, as shown by the facts of the case, could have set up in those suits the same defenses which it made in this case; and having neglected to defend itself in those suits, it can not now be heard to contest the justice of the claim. The Southern has had its day in court, and can not have another. *Bullock* v. *Winter,* supra; *Raleigh & Gaston R. Co.* v. *W. & A. R. Co.,* supra. It clearly appears from the evidence and the record that the ground of the liability of the vouchers in the two previous suits and the ground of the liability of the Southern in this suit arose from the same subject-matter—the shipment that the Southern itself, as the delivering common carrier, delivered at its destination. Furthermore, the notices of the avouchments served upon the Southern specifically informed it that the claims against the vouchers were in regard to the pilfering of that same shipment. The Southern was no stranger to the subject-matter of the former suits, and those suits were 'of such a kind' that the Southern could have set up therein the same defenses which it could have set up if it had been a party defendant to the suits. This being true, and the Southern, having been properly vouched into court, is concluded by the judgments in the former suits, and a verdict for Acme was demanded by the law and the evidence. The cases cited in behalf of the Southern which hold that the voucher 'still has the burden of showing that the vouchee is responsible to him, and to do this will require allegation and proof of extrinsic matter unless the record in the former suits may suffice to establish such responsibility,' are not in conflict with our present ruling, for the records in the two previous suits were sufficient to establish such responsibility against the Southern. Moreover, those cited cases did not deal with the controlling law in this case, to wit, that the judgment obtained against a voucher is conclusive against the vouchee as to the right of the plaintiff to recover the amount of the verdict rendered in the suit against the voucher, *and as to all defenses that either the voucher or vouchee set up, or could have set up,* in the suit against

the voucher." Nor do we think that we have misapplied or misinterpreted Judge Russell's opinion in the *Raleigh & Gaston R. Co.* case, 6 *Ga. App.* 616. In our original opinion we quoted the following part of the first headnote of that case: "For one who is himself sued to have a right to vouch another into court, it is not enough that the vouchee is liable in some way to the voucher, but it must appear that the liability of the vouchee arises from the identical cause of action upon which the voucher is in danger of being held liable, *or that the ground of the liability arises from the same subject-matter.*" That ruling of this court is clear, unequivocal, and unambiguous and covers this case like a blanket. Moreover, in *Usry* v. *Hines Lumber Co.*, supra, the *Raleigh & Gaston* case was approvingly cited. After careful consideration of the grounds of the original and supplementary motions for a rehearing, we see no merit in any of them.

*Rehearing denied. MacIntyre and Gardner, JJ., concur.*