28807.   ACME FAST FREIGHT INCORPORATED *v.* SOUTHERN RAILWAY COMPANY.

DECIDED JULY 16, 1942.   REHEARING DENIED JULY 30, 1942.

*Hooper, Hooper & Miller, Hugh G. Head Jr.,* for plaintiff.

*Neely, Marshall & Greene, Edgar A. Neely Jr., W. O. Wilson,* for defendant.

BROYLES, C. J.   Upon the first appearance of this case in this court (65 *Ga. App.* 647, 16 S. E. 2d, 62), we held that the Southern Railway Company was liable to Acme as a matter of law in the amount of the previous recovery by Saul against Acme, because that suit (where the Southern was vouched into court by Acme) adjudicated against the Southern not only the question of Acme's liability to Saul and the amount thereof but the additional question of the Southern's liability to Acme.   Upon certiorari, the Supreme Court held that the ruling was erroneous, and reversed the judg-

ment of this court, "without any determination being made by this court [the Supreme Court] as to the additional question whether the aliunde proof of record in this case did or did not demand a finding that the Southern as delivering carrier was liable to Acme under the Hepburn act and the subsequent amendments thereto. 49 U. S. C. A. § 20, par. 11. That question, not having been passed upon by the Court of Appeals, remains open for determination by that court under the exceptions to the refusal of a new trial, brought to that court. The remaining question, which the adjudication by this court now makes it necessary for the Court of Appeals to determine, is whether or not from the aliunde proof a holding by it is demanded that the trial judge erred in finding in effect that Acme had failed to show that the loss occurred subsequently to the delivery of the goods by Acme to the Pennsylvania Railroad as initial carrier." *Southern Railway Co.* v. *Acme Fast Freight Inc.*, 193 *Ga.* 598, 602 (19 S. E. 2d, 286).

In our opinion the undisputed aliunde proof demanded a finding that the pilferage of the shipment occurred after its delivery to the Pennsylvania Railroad in New York City. The contention of the Southern Railway Company, that Acme carried the shipment to the Pennsylvania Railroad on October 21, 1937, and had it weighed, and then carried it to a garage in New York City where it was stored that night, and that on the following day (October 22, 1937) Acme delivered it to the Pennsylvania Railroad, and that the shipment was probably pilfered while it was stored in the garage on the night of October 21, 1937, is not supported by any evidence of probative value. The only evidence tending to support the contention was contained in a letter, written to Acme on September 16, 1940, by the defendant's general freight claim agent, in which he stated: "The fact has been established that the two cartons of clothing in question were received from the shipper about 1:00 p. m., October 21, 1937, no weight being designated. The weighing was done at the 37th Street Station of the Pennsylvania R. R. and, as I have already pointed out, the two cartons weighed 164 pounds. The truck containing the shipment was stored overnight of October 21, 1937, in the West 20th Street garage at 124 West 20th Street, New York, delivery being made the next day to the P. R. R., and these two packages were in apparent good order with no visible evidence of having been tampered with." This letter

shows on its face that the writer knew nothing personally about the matter, but was merely stating what had been "established by the police departments of the Pennsylvania R. R. and Southern Railway in New York," as specifically stated in his letter.

This evidence was pure hearsay, and it is admitted to be such in the brief of counsel for the Southern. However, counsel argue that since the hearsay evidence was admitted without objection it became valid evidence and could be considered by the jury. The only case cited to support the argument is *Georgia Coast &c. R. Co. v. Herrington,* 14 *Ga. App.* 539 (81 S. E. 814). That case is not here applicable since the evidence there under consideration was *secondary* evidence and not hearsay evidence. As said by this court in *Rushin* v. *State,* 63 *Ga. App.* 646 (11 S. E. 2d, 844), "There is a distinction between illegal testimony and secondary evidence. Hearsay testimony (illegal testimony) has no probative force whatever, and its only effect is to prejudice the minds of the jury against the party against whom such hearsay evidence is introduced. The only objection to secondary evidence is that it is received without first laying the preliminary foundation. Such evidence stands on a different footing, and if admitted without objection it is nevertheless competent." Under numerous decisions of the Supreme Court and of this court, hearsay evidence is wholly without probative value, *and its introduction without objection* does not give it any weight or force whatever in establishing facts. *Michigan Insurance Co.* v. *Parker,* 10 *Ga. App.* 697 (73 S. E. 1096); *Rabun* v. *Commercial Bank,* 21 *Ga. App.* 43 (93 S. E. 524); *Brooks* v. *Pitts,* 24 *Ga. App.* 386 (100 S. E. 776); *Hale* v. *Hale,* 28 *Ga. App.* 509 (2) (111 S. E. 740); *Slater* v. *State,* 44 *Ga. App.* 295 (161 S. E. 271); *Spencer* v. *Wright,* 48 *Ga. App.* 126 (172 S. E. 91); *Jones* v. *State,* 50 *Ga. App.* 97 (176 S. E. 896); *Earle* v. *Barrett,* 51 *Ga. App.* 514, 515 (180 S. E. 855); *Higgins* v. *Trentham,* 186 *Ga.* 264 (197 S. E. 862), and cit.

Under the foregoing decisions, the above-referred to hearsay evidence, although admitted without objection, was without any probative value whatever to establish any fact, and should be and is eliminated by this court in its consideration of the evidence adduced. With that evidence eliminated, the undisputed testimony and the bill of lading show the following facts: On October 22, 1937, the shipment was delivered by Acme in apparent good order

to the Pennsylvania Railroad in New York City. When so delivered it weighed 164 pounds and a receipt for it was given Acme by the railroad. When the shipment reached Atlanta it weighed only 139 pounds. There is not a scintilla of legal evidence to establish that the shipment was stored in a garage overnight *after* it had been weighed by the Pennsylvania Railroad at one of its stations. On the contrary, the undisputed evidence (undisputed except by the illegal hearsay evidence) showed that the shipment was delivered to, weighed by, receipted for, and retained by, that railroad on October 22, 1937, and that the shipment was never in Acme's possession after it was weighed by the Pennsylvania Railroad. The controlling question before this court is whether the pilferage occurred before or after the shipment was delivered to the Pennsylvania Railroad. Under the undisputed probative evidence in the case, and the binding stipulation of the parties that the pilferage of the shipment occurred in New York City and before it was transferred by the Pennsylvania Railroad to the Southern Railway Company, the only possible logical answer is that the shipment was pilfered while in the possession of the Pennsylvania Railroad. This being true, the Southern Railway Company was liable to Acme. We think the evidence demanded a judgment in favor of Acme, and that the judgment rendered for the Southern was contrary to law and the evidence.

*Judgment reversed. MacIntyre and Gardner, JJ., concur.*

### ON MOTION FOR REHEARING.

Broyles, C. J. In the motion for a rehearing of this case, counsel for movant cite four cases, the decisions of which, they assert, require a different judgment from that rendered. The cases are: Clark *v.* Barnwell, 12 Howard (U. S.), 272 (13 L. ed. 985); Gramling Electric Refrigeration *v.* Southern Ry. Co., 155 S. C. 394 (152 S. E. 670); Goldberg *v.* New York &c. R. Co., 130 Me. 96 (153 Atl. 812); Krallman *v.* Illinois Central R. Co., 209 Mo. App. 286 (235 S. W. 830). The decision in the Clark case is not applicable to the facts of the instant case, for there it was shown that the damage to the shipment occurred while the shipment was in possession of the defendant carrier (a ship), and the decision in favor of the carrier was based upon the fact that the evidence showed that the damage was due to the "dangers of the seas;" and, that under the provisions of the bill of lading, the carrier was not

liable for such damage. Yet, in that case, the court made the following ruling: "The words 'contents unknown,' being annexed to a bill of lading, imply that the master [of the ship] only meant to acknowledge the shipment in good order of the cases, as to their external condition. He *might justify himself by showing that the contents were not in good order.*" (Italics ours.) The case of Gramling Electric Refrigeration, supra, is distinguished by its facts from the instant case. There a refrigerator was crated at the factory in Schenectady, N. Y., shipped from there to New York City by rail, then from that city via the Clyde Steamship Line to Jacksonville, Fla., where it was delivered to the Florida Electric Company and sent by rail to Atlanta, where it was received by the General Electric Company and stored in its warehouse, where, as said by the Supreme Court of South Carolina, it remained "indefinitely," until it was taken out and delivered to the Southern Railway Company for shipment to Orangeburg, S. C. In due time the shipment arrived in Orangeburg over the line of the Southern and was delivered to the Gramling Electric Refrigeration. The shipment was then loaded on a truck and carried to Cameron, S. C., which was about ten miles distant. There the refrigerator was uncrated and found to be damaged beyond repair. The Gramling corporation sued the Southern Railway Company for damages and obtained a verdict and judgment in its favor. The Supreme Court of South Carolina reversed the judgment and held there was no presumption that the damage to the shipment was caused by the delivering carrier, since the shipment was twice broken and its condition on reshipment was not shown. And Blease, J., concurring in the judgment, stated: "I concur in the result of the opinion of Mr. Justice Cothran on the ground that I do not think there was *any evidence* favorable to the plaintiff's cause of action that the refrigerator was in good condition at the time of its delivery to the railroad company in Atlanta, Ga., as some time prior to that delivery the refrigerator was not in the hands of the delivering carrier, or of any of its connecting carriers. The damage to the refrigerator may have occurred between its receipt in Atlanta and the time of its delivery to the delivering carrier. It was incumbent upon the plaintiff, as I understand the law, to show, under the circumstances, that a shipment of this kind was in good condition at the time of its delivery to the defendant carrier."

In the Goldberg case, supra, the Supreme Court of Maine ruled as follows: "A bill of lading signed by a carrier acknowledging the receipt of merchandise in good order or in apparently good order is prima facie evidence that, as to external appearance and in so far as its condition could be ascertained by mere inspection, the goods were in good order, and the burden of going forward with the evidence and rebutting the presumption raised by such an admission falls on the carrier." In the same case, on page 813, the court held that it was incumbent on the shipper to prove that the goods, when delivered to the carrier, were *in at least better condition* than was found to be the case of their delivery to the consignee. In the instant case the undisputed evidence showed that the goods when delivered to the Pennsylvania Railroad were at least in twenty-five pounds better condition than when they arrived in Atlanta.

In the Krallman case, supra, the court made the following ruling: "The bill of lading receipted for the tomatoes 'in apparent good order (contents, inward condition, and value unknown).' This recital was an acknowledgment of the good order of the external apparent condition of the goods and prima facie evidence against the carrier who issued it." In that case the court held that the defendant terminal carrier was not a party to the bill of lading because there was no proof that the relation of partnership existed between it and the initial carrier. So, in the instant case the recital in the bill of lading that the shipment was received in "apparent good order, contents unknown," was prima facie evidence against the Pennsylvania Railroad. Assume that it was not such evidence against the Southern, yet since the prima facie evidence against the Pennsylvania that the shipment was in good order when received by it was not rebutted by any legal evidence introduced by the Southern, but on the contrary was supported by other aliunde proof by Acme, a finding was demanded that the shipment was in good order when received by the Pennsylvania; and, under the binding stipulation entered into by the parties that the pilferage occurred in New York City *and before the shipment was transferred from the Pennsylvania to the Southern,* a finding was demanded that the pilferage occurred while the shipment was in the possession of the Pennsylvania; and, therefore, under the law, a judgment for Acme was demanded.

The contention of movant that the evidence failed to show the value of the twenty-five missing pounds of the shipment is without merit. As said by the Supreme Court in its opinion in this case: "If Acme did in fact have a remedy over against the Southern, then under Code section quoted [§ 38-624] its avouchment by Acme would render the finding in the suit of Saul against Acme conclusive against the Southern as to the liability and the amount of liability by Acme to Saul; and upon such right to a remedy over being subsequently established by aliunde proof, the Southern would be liable to Acme in the amount of the judgment which had been entered against it." Acme did vouch the Southern into court, and did establish by uncontradicted aliunde evidence of probative value that it had a remedy over against the Southern. Therefore the Southern was liable to Acme in the amount of the judgment entered against it in the Saul case.

Now that the law applicable to the case has been declared by the Supreme Court, a new trial should be had under the law as thus expounded.

*Rehearing denied. MacIntyre and Gardner, JJ., concur.*