44519. LEACHMAN, Trustee, et al. v. MITCHELL.

PANNELL, Judge. Marie Leachman, trustee in bankruptcy for Philip Philip Mitchell, an individual doing business under the name and style of "Philip Philip Mitchell Advertising Specialties" brought an action in the Civil Court of Fulton County against Mrs. Elizabeth H. Mitchell, the bankrupt's wife, alleging an assignment of the bankrupt's accounts receivable to the Citizens & Southern National Bank of Atlanta, Georgia, as security for an indebtedness then owed by the bankrupt's wife to said bank, as well as subsequent payments out of collections from said assigned accounts made to the bank and seeking judgment against the wife on grounds that she received the benefit of the assignment of accounts receivable and the payments which were made on her debt, all of the relief sought being expressly predicated on Title 11, Section 107 of the U.S.C.A. (Section 67 of the Bankruptcy Act.) The only witness in the case as to the transaction was the defendant. Based on admission made by the defendant in answer to the petition and the testimony of the defendant, it appeared that on August 1, 1960, the

bankrupt made an initial loan with the bank and, thereafter, as a result of numerous transactions, the loan amounted to $14,328.28 on July 16, 1963. Prior to this date and on April 10, 1963, a suit was filed in the Superior Court of Fulton County against the bankrupt by one of the bankrupt's creditors, which resulted in a judgment against the bankrupt on December 8, 1965, in the principal amount of $31,324.26, plus interest and court costs. On July 16, 1963, because the plaintiff wife felt that certain stock in Southland Investment Corporation, deposited as security for the loan to the bank, should be in her name because she "earned the money for the stock," it was transferred to the defendant's name and she executed a new note to the bank in her name for the exact amount of the bankrupt's loan hypothecating the stock transferred to her to secure this note and the bankrupt's loan was marked paid in full. This transaction occurred more than 2½ years before bankruptcy. Subsequently, the bank felt itself insecure because the stock hypothecated with it had little value, and the bankrupt on October 5, 1965, assigned his accounts receivable, past, present and future, to the bank, and properly recorded the transfer in accordance with law. This transaction occurred within a year prior to bankruptcy but more than four months prior thereto. On December 20, 1965, the bankrupt, directly from funds collected on the assigned accounts receivable, paid the bank $4,142.54 and on January 3, 1966, made another payment directly from funds collected on the assigned accounts receivable in the amount of $10,859.96, which paid the wife's note in full and she received the stock and subsequently sold the same, but the sale price thereof does not appear from the evidence. Neither did it appear from the evidence that any of the funds from the collections on the accounts receivable were ever deposited to the bankrupt's credit or handled by him as his funds. Nor did it appear from the evidence that any of the funds collected by the bankrupt on the accounts receivable and turned over to the bank as payment on the wife's note were from accounts not in existence at the time of the transfer on October 5, 1965. The bankruptcy petition was filed February 9, 1966. Aside from the statements contained in the schedules attached to the bankruptcy petition, the only evidence as to the bankrupt's financial condition was the evidence as to the filing of the suit and the judgment above

mentioned, and the following testimony of the wife defendant: that at some time prior to the filing of the petition in bankruptcy they discussed the question of bankruptcy and that what brought this about was "we didn't have any money." Whether this discussion occurred one year or one month or one day prior to the filing of the petition does not appear. She also gave the following answer to the following question. Question: "Now, except for the accounts receivable there wasn't any other substantial asset that Mr. Mitchell owned *in connection with the business,* was there? (Emphasis supplied.) Answer: "Not that I know of, no, sir." With the close of the evidence, the trial judge, before whom the case had been submitted for trial without the intervention of the jury, granted defendant's "motion for directed verdict" and entered judgment for the defendant. The plaintiff appealed. *Held:*

1. Under the provisions of Section 107 d. (2) (a) of the United States Code Annotated, it is necessary to show that the bankrupt was insolvent or was rendered insolvent when the transfer or conveyance was made. For the purposes of subdivision d. "a person is 'insolvent' when the present fair salable value of his property is less than the amount required to pay his debts. . ." Section 107 d. (1) (d), United States Code Annotated. The wife's testimony that the reason she and her husband discussed bankruptcy, at a time not determined, was because "we didn't have any money" is not sufficient to demand a finding of insolvency under the definition above set forth nor does her statement that except for the accounts receivable there was no other substantial asset that the bankrupt owned "in connection with the business." This does not exclude assets which he might have had which were not owned in connection with the business. This is all of the evidence as to the bankrupt's financial condition other than the fact that a suit had been filed against him. The fact that he had had a suit filed against him did not show that he was insolvent within the definition. The only other evidence on this question was the petition in bankruptcy with its schedule of assets and liabilities sworn to by the bankrupt. Does this petition, sworn to by the bankrupt, have any probative value to prove the correctness of the list of debts and assets? We think not. It is nothing more than an ex parte affidavit (*Adkins v. Hutchings,* 79 Ga. 260, 263 (4 SE 887))

and pure hearsay as to the truth of its contents, and not coming within any of the exceptions to the hearsay rule, has no probative value and proves nothing as to the bankrupt's financial condition (*Michigan Mut. Life Ins. Co. v. Parker*, 10 Ga. App. 697 (1) (73 SE 1096) ; *Brooks v. Pitts*, 24 Ga. App. 386 (1) (100 SE 776) ; *Jarriel v. Savannah Guano Co.*, 34 Ga. App. 72 (128 SE 237) ; *Slater v. State*, 44 Ga. App. 295 (161 SE 271) ; *Spencer v. Wright*, 48 Ga. App. 126 (172 SE 91) ; *Jones v. State*, 50 Ga. App. 97 (176 SE 896) ; *Earle v. Barrett*, 51 Ga. App. 514, 515 (180 SE 855) ; *Hodge v. American Mut. Liab. Ins. Co.*, 57 Ga. App. 403, 404 (195 SE 765) ; *Rushin v. State*, 63 Ga. App. 646, 647 (11 SE2d 844) ; *Acme Fast Freight v. Southern R. Co.*, 67 Ga. App. 885, 887 (21 SE2d 493)), although the petition and sworn schedules were admissible for the purpose of showing, and had probative value as proof, that the bankrupt filed a petition in bankruptcy and that he made the statement of assets and liabilities therein contained. See in this connection *Hardin v. Rubin*, 169 Ga. 608 (151 SE 31), where it was held error to exclude a financial statement and a letter of the bankrupt where it was offered solely for the purpose of showing that the bankrupt did obtain credit based on the representations therein.

That the bankrupt went into bankruptcy in slightly more than four months after the assignment of the accounts receivable as security for his wife's debt would not be sufficient to demand a finding that the bankrupt was insolvent, within the meaning of the above definition, at the time of the transfer. The burden was on the trustee to show insolvency (Trautwein v. Mandel, 127 F2d 567; 49 Am. B. R. (NS) 299) and under the evidence, the trial judge, as the trior of the facts, was authorized to find that insolvency, as defined, had not been shown, and that no recovery could be had under Section 107 d. (2) (a), United States Code Annotated.

2. However, even should we assume that a finding of the insolvency of the bankrupt was demanded as a matter of law, another ingredient must appear before recovery can be had under d. (2) of Section 107, United States Code Annotated. It must appear that the transfer was incurred without fair consideration by the debtor. Under d. (1) (e), it is stated that "consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as

a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained." Since under d. (1) (b) debt is defined as "any legal liability; whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent" (see in this connection Shay v. Gagne, 275 Mass. 386 (176 NE 200)), the transfer here of the accounts receivable was made to secure a contingent debt of the bankrupt for the reason that the evidence clearly shows that the defendant wife here assumed a debt of her husband's through the guise of making her own note to the creditor for the exact amount of the husband's debt which she could not legally do, and which it was her personal privilege to have set aside. So long as she enjoyed this privilege, a contingent debt existed as against the bankrupt. See in this connection *Code* § 53-503. While there are instances where a wife assuming a debt of her husband's may be precluded from exercising this privilege because she gets value for the assumption (*Lowenstein v. Meyer,* 114 Ga. 709 (3) (40 SE 726)), the evidence does not demand that she got such value here. On the contrary, the evidence amply authorizes a finding that the stock which was transferred to her name when she assumed the debt of her husband was actually hers at the time, and even if it were not, the only evidence as to the value of the stock is that it was worthless at the time the transfer was made. Accordingly, the trial judge was authorized to find that the transfer of the accounts receivable was not without fair consideration, and for this reason, no recovery could be had under d. (2) (a).

3. Even should we assume the insolvency and that the transfer was without a fair consideration, there was no proof that after the assignment the bankrupt was left with "an unreasonably small capital" for the operation of the business under d. (2) (b); or, indulging in the same assumption, there was no proof the debtor at the time of the transfer intended to incur or believed that he would incur debts beyond his ability to pay as they matured under d. (2) (c). Accordingly, no grounds for recovery appear under these divisions of Section 107, United States Code Annotated.

4. While under subsec. d. (2) (d) of this section voiding trans-

fers made by a debtor with actual intent to hinder, delay or defraud creditors, intent to hinder or delay is condemned equally with intent to defraud (In re Process-Manz Press, Inc.(D. C. Ill. 1964) 236 FSupp. 333, reversed on other grounds 369 F2d 513, certiorari denied, 386 U. S. 957 (87 SC 1022, 18 LE2d 104)) ; yet to constitute a conveyance voidable under the provision of this section governing fraudulent conveyances, an actual intent on the part of debtor to hinder, delay or defraud creditors must be shown, and that requirement is not satisfied by a showing that in light of subsequent events an actual preference may have been effected by the payment in question. Nicklaus v. Peoples Bank & Trust Co., Russellville, Ark. (C. A. Ark. 1966) 369 F2d 683.

Did the evidence demand a finding that the transfer of the accounts receivable was made or incurred with actual intent as distinguished from intent presumed by law to hinder, delay or defraud either existing or future creditors under Section 107 d. (2) (d) of the United States Code Annotated? If not, then the trial judge was authorized to find that there was no such intent. While it may be true that where a conveyance is made with the requisite actual intent the fact of fair consideration is immaterial, and proof of insolvency at the time of the transfer is inconclusive (Collier on Bankruptcy, 14th Ed., Vol. 4, Par. 67.37, page 531) ; yet it is also true that the absence of a showing by the trustee of insolvency of the debtor and the absence of a showing of a lack of fair consideration for the transfer may be taken into consideration, along with other factors, in determining whether the intent, if any, was actual rather than presumptive.

Where, as here, there was no proof of insolvency or lack of a fair consideration or lack of good faith on the part of the transferee bank, and a finding of no benefit to the defendant was authorized (as she could have set aside the assumption of the debt by her), but only proof of the pendency of a contested suit against the bankrupt and the fact of the transfer itself more than four months prior to the filing of the voluntary petition of bankruptcy, we cannot say that the trial judge, the trior of the facts, was not authorized to hold the transfer of the accounts receivable was made without an actual intent to hinder, delay or defraud the creditors.

5. If the transfer of the accounts receivable was not voidable by the trustee, the bank was entitled to the proceeds of its

security as against the trustee and even after bankruptcy; therefore, the direct payment of the proceeds of the accounts by the debtor to the bank within the four month period prior to bankruptcy does not constitute a voidable transfer within Section 107 d. (3). Even should we assume that the direct payment to the bank of the proceeds of a transferred account not in existence until within a period of four months prior to the filing of the bankruptcy petition, might come within such section if all the other elements were proven, there was no evidence here to show that any of the proceeds paid to the bank were proceeds from accounts other than those in existence at the time of the transfer of the accounts receivable to the bank more than four months prior to the filing of the petition. Accordingly, the trial court did not err in finding in favor of the defendant, both as to the transfer of accounts receivable and the payments of the proceeds thereof to the bank.

*Judgment affirmed. Quillian and Evans, JJ., concur.*

SUBMITTED JUNE 2, 1969—DECIDED OCTOBER 15, 1969—REHEARING DENIED NOVEMBER 13, 1969.

*Mitchell, McClelland & Jernigan, J. Ralph McClelland, Jr.,* for appellants.

*Cotton, Katz & White, J. Timothy White,* for appellee.