## 70617. CARR et al. v. THE STATE.
(335 SE2d 622)

BIRDSONG, Presiding Judge.

Andy Carr and his son, Chet, appeal their conviction for simple battery and obstruction of an officer. Both Carrs attended a George Jones concert held at the Calhoun Musicland Pavilion, a private enterprise, in Gordon County, Georgia. Security was provided by Georgia State Trooper Mike Ralston, and Gordon County deputy sheriffs Greg Brock and Chuck Cummings. All officers were off-duty but were working with permission of their superiors. Deputies Brock and Cummings were in uniform but Trooper Ralston wore civilian clothes.

The management announced over the loudspeaker that spectators could come to the front of the stage during the performance to take one picture but must return to their seat. Chet Carr came to the front of the stage to make a picture but did not return to his seat. Security officers eventually persuaded him to return to his seat after several attempts. Andy Carr then moved to a seat on the ground on the aisle in front of the stage. He did not have a camera and was asked several times to return to his seat but refused.

Trooper Ralston described Andy Carr as drunk, belligerent, and using profanity. Deputy Cummings portrayed Carr as having the odor of alcohol on his breath, "very glassy eyed. He was very stumbly. He could not stand properly. He was weaving." Cummings testified: "Andy Carr, said to me . . . 'You son of a. . . . You are not man enough to move me nor are you man enough to arrest me.' . . . At that time he got very belligerent. . . . You couldn't reason with him. He seemed like he was determined to show me that he was not going to be moved, so I asked him again. That was the last time that I intended to ask him, and when I did he shoved me right here (Indicating). . . . He was still shouting obscenities, very vulgar obscenities. At that time I told Mr. Carr he was under arrest for simple battery. . . . He still was not going to be moved. At that time I charged him with obstruction of an officer, resisting arrest. We got into a scuffle. . . ."

After Deputy Brock arrived, Andy Carr struck Brock with his fist and kicked Cummings in the groin and the back. Carr was handcuffed

and led away. As they were leaving, Chet Carr asked Deputy Brock "[w]here the hell are you all taking him?" Deputy Brock told him to "step back out of the picture, just stay out of it, that he [Andy Carr] was under arrest. At that time . . . Chet Carr came up behind me and struck me in the back with his fist and his forearm." Chet Carr said he "touched" or "tapped" the officer on the back to get his attention. Both father and son were arrested. Chet was charged with simple battery and his father was charged with two counts of simple battery and obstruction of an officer. They appeal their conviction on all counts. *Held*:

1. Andy Carr contends it was error for the trial court to refuse his motion for directed verdict as to the count alleging obstruction of an officer. We do not agree. Our Code defines this offense as one in which a person "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties. . . ." OCGA § 16-10-24. Hence, it is an essential element of proof that the officer be engaged "in the lawful discharge of his duties." *Dixon v. State*, 154 Ga. App. 828 (1) (269 SE2d 909). At issue here is whether Deputy Cummings, while in uniform, off-duty, and being paid by and under the direction of Musicland, while attempting to make a patron move from an aisle, was in the "lawful discharge of his official duties."

Although Cummings first testified that Andy Carr refused to move, cursed him, and shoved him, before he placed him under arrest for simple battery, defense counsel was successful in getting Cummings to equivocate as to which act came first and what words were used. However, Cummings finally stated: "I thought I was doing my job as a security officer and as a deputy of Gordon County. . . . Q. All right, you were doing your job as a security officer for Calhoun Musicland. . . . A. When I asked him to move, yes, I did, and then when he become [sic] obscene and was shouting obscenity then when he took his hand and pushed me then I figured it went back on to being a law enforcement officer. . . ." We agree with the officer.

In *Duncan v. State*, 163 Ga. App. 148 (1) (294 SE2d 365), a case involving a deputy sheriff, off-duty in uniform, employed as a bouncer by a motel bar, this court held that "all law enforcement officers have the general duty to enforce the law and maintain the peace. They carry this duty twenty-four hours a day, on and off duty. It is true that the deputy in this case was discharging the duties of his private employment when he escorted appellant from the establishment, but we believe that when appellant became unruly and threatened to breach the peace, the deputy had an official duty, in addition to his private employment duty, to take action. . . . A holding that law enforcement officers have no official duty to maintain the peace under these circumstances would be in contravention of the policy we seek to further." "A police officer discharges his lawful duty when he ar-

rests an individual who has committed a crime in his presence. . . ." *Brown v. State*, 163 Ga. App. 209, 212 (294 SE2d 305).

Here, the jury was authorized to find from the evidence that Andy Carr had committed the offenses of public drunkenness by his boisterous conduct, indecent, vulgar, profane, loud, and unbecoming language (OCGA § 16-11-41 (a)); used "fighting words" to Deputy Cummings by the use of "opprobrious or abusive words," without provocation, which were used in his presence and tended to provoke violent resentment (OCGA § 16-11-39 (1)); and disrupted a lawful gathering by knowingly committing an act which could reasonably be expected to disrupt a lawful gathering (OCGA § 16-11-34 (a)), before assaulting Cummings, and before he was arrested. Trooper Ralston confirmed that Andy Carr called Cummings a "son of a . . ." and advised him he was not man enough to move him or arrest him, before he was arrested.

The off-duty trooper and deputy sheriff, as security agents for the management, were authorized to request Carr to move from his seat in the aisle as he was blocking passage and interfering with the view of other patrons. *Duncan v. State*, supra, pp. 148-149. Following their observation that he was intoxicated, boisterous, cursing, and unruly, they were authorized to arrest him as a law enforcement officer in the execution of their official duties for the criminal offense of public drunkenness. *Dixon*, supra. The jury was also authorized to find that Carr assaulted Cummings by pushing him, prior to the time Cummings informed him he was under arrest for "simple battery." The jury was authorized to find that Carr's conduct, following Cummings' announcement that he was under arrest, did constitute obstruction of an officer in the lawful discharge of his official duty. *McDaniel v. State*, 164 Ga. App. 105 (2) (296 SE2d 401); *Dixon*, supra; *Wells v. State*, 154 Ga. App. 246 (268 SE2d 74); see generally Anno. 44 ALR3d 1018, Obstructing or Resisting Officer by refusal to obey orders (1041, § 11), or sitting down, lying down or going limp (1050, § 13). Whether such evidence was sufficient to show a hinderance, or impeded the officers, in carrying out their duties was a question for the jury. *Hudson v. State*, 135 Ga. App. 739, 742 (218 SE2d 905).

A directed verdict would be appropriate only when "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal." OCGA § 17-9-1 (a); *Johnson v. State*, 165 Ga. App. 773, 775 (302 SE2d 626). There was a conflict in the evidence and the evidence presented did not demand a verdict of acquittal. Hence, the trial court did not err in denying defendant's motion.

2. We find no error in the court's charging the jury on the offense of public drunkenness, as it was a misdemeanor offense, supported by the testimony of the officers, and could have served as the basis for a

lawful arrest by an officer for such offense committed in his presence (OCGA § 17-4-20), or by the same officer acting as a citizen in making a citizen's arrest (OCGA § 17-4-60); *Young v. State*, 238 Ga. 548, 549 (233 SE2d 750).

3. There was no reversible error in charging the jury with the definition of probable cause for arrest. At worst, the charge is surplusage. At best, the jury could have found the officer had probable cause for making a warrantless arrest for an offense committed in his presence. We find no harmful or reversible error.

4. The charge on duties of law enforcement officers was taken from *Duncan v. State*, supra, and was adjusted to the facts of this case. This enumeration is without merit.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs specially.*

CARLEY, Judge, concurring specially.

I concur in the judgment and with all that is said in the majority opinion with the exception of the discussion of the standard for review of the denial of a motion for directed verdict of acquittal. In this connection, however, I believe that the evidence in this case clearly authorized the denial of the motion for directed verdict as adjudged by the standard enunciated by our Supreme Court in *Lee v. State*, 247 Ga. 411 (276 SE2d 590) (1981). See my special concurrence in *Maddox v. State*, 170 Ga. App. 498, 503 (317 SE2d 617) (1984).

DECIDED SEPTEMBER 4, 1985 —
REHEARING DENIED SEPTEMBER 20, 1985 —

*William P. Bailey*, for appellants.
*Darrell E. Wilson, District Attorney*, for appellee.