76928. UNION CAMP CORPORATION v. DALEY.
(374 SE2d 329)

BIRDSONG, Chief Judge.

The defendant below, Union Camp Corporation, appeals the jury verdict for the plaintiff Willard Daley in this injury case, and the failure of the trial court to grant Union Camp a directed verdict or a judgment n.o.v. Union Camp also asserts errors in the jury charge and admission of certain evidence and complains on the general grounds. *Held*:

1. We include here resolution of the appellant's complaints as to sufficiency of the evidence (general grounds) and as to the trial court's failure to grant directed verdict or judgment n.o.v.

The jury heard the evidence and rendered a finding that the facts before it, under the law charged to them, supported a verdict for the plaintiff on the preponderance of the evidence. On appeal, we are bound to view and resolve the evidence in favor of the verdict (*Drake v. State*, 241 Ga. 583, 585 (247 SE2d 57)), and to resolve any doubt or ambiguity in favor of the verdict, for the presumption is that if there is any doubt as to the construction of the evidence, the jury resolved it in fashioning the verdict.

A directed verdict (and judgment n.o.v.) is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict. OCGA § 9-11-50 (a) (b). Viewing this evidence in favor of the jury's verdict, we cannot find the evidence, with all its reasonable deductions, demanded a verdict for the defendant, even though it is entirely circumstantial. See *Shepherd v. Holmes*, 184 Ga. App. 648, 649 (362 SE2d 396) as to the sufficiency of circumstantial evidence generally in a slip and fall/foreign substance case.

The evidence showed that the plaintiff Grady had worked 26 years switching rail cars. He was an employee of Central of Georgia Railroad, switching rail cars in the yard of Union Camp Corporation. The work involved the movement of tank cars in the yard between the "tall oil" plant and the distillation plant. A substance known as "pitch," a by-product of paper manufacturing, would be loaded in the distillation plant and moved by tank car to the tall oil plant and used

as fuel in the mill operations. If employees of Union Camp did not put a rubber gasket in the opening of the tank lid, and secure the lid tightly, this substance would slosh out of the cars as they were being moved, and sometimes onto the ground and rails.

A railroad employee testified that on numerous occasions before February 25, 1983, when plaintiff fell, he had to complain about the substance sloshing out of the tank cars because of inadequate closure of the lids. He also testified it was important that a switchman keep his feet clean and see that none of that "stuff" got on his shoes, because mounting and dismounting the cars would be dangerous.

The plaintiff produced a jar of substance which he and some other witness testified "looked like," or was, the "stuff" that sloshed out of the cars. It was described variously as "soap," "soap skimmings," or looking like shaving cream. When the stuff was allowed to settle a long time, it would sink into the ground, or become crusted with dust and dirt on the surface so that it was difficult to see.

The plaintiff climbed up on the running board of a certain tank car and, finding he was unable to set the hand brake, was attempting to climb down. His foot slipped on the running board and he fell backwards to the ground. The running board was a metal grated or cleated board. The engineer saw Daley's fall and described it: "Mr. Daley mounted the running board of the tank car in an effort to disengage an applied hand brake and I understand the hand brake could not be disengaged and as he was attempting to dismount the tank he was holding onto what we refer to as grab iron with one hand and was reaching for the stirrup, which is a ladder to the car, with his foot and before his foot engaged the ladder, his other foot, which was on the running board, slipped out from under him and caused him to lose his hand hold and [he] fell back to the ground."

Daley testified that when he climbed up and passed over the running board he did not see the foreign substance; he said, "I was looking at the defective hand brake. I didn't examine it [the running board] inch by inch." In effect, he testified he was not looking at the running board at all, because "I was looking for the hand brake." After he fell, he did not examine his shoes, and he did not examine the running board. He was taken to the hospital. He did not tell anyone that he had slipped on a foreign substance. Several hours later, he returned to the tank car and saw the substance on the running board, a little spot about one-half the size of his hand. But three railroad men were upon the car when he returned to the car, and he conceded on cross-examination that he did not know that these three men had not tracked the substance onto the running board. The substance he saw when he returned to the area was a light tan color, smudgy, overlain with dust as if it had been there a long time, he guesstimated a couple of weeks. The stuff was lighter than the substance exhibited in

the jar in court; it was hard and crusty on the outside "and it had been broken" as if it had been stepped in. Another employee (Sheehan) testified that when Daley returned from the hospital later that day before leaving the job, Daley reached over and got something off the car and showed it to Sheehan and made as if to wipe it on Sheehan's shirt. Sheehan testified he saw "it" on the running board; "it wasn't too much of it but it looked like it might have been in between the cracks or grating on the running board."

There was also testimony that the "stuff" had been a frequent presence in the yard for many years, that often complaints were made about the stuff and the fact that Union Camp's employees should tighten the tank car lids more securely, and it was done; but the substance evidently was still commonly about the area. Other witnesses, particularly Union Camp employees, testified they examined the car after Daley's fall and did not see a foreign substance, and that at the time Daley never mentioned that he had slipped on something.

The appellant contends there is absolutely no direct, or indirect, evidence that Daley slipped on any "stuff" that frequently sloshed out of the cars and remained on the cars and premises. Yet, the jury decided there was evidence, though entirely circumstantial, that Daley slipped in the oily, soapy stuff that sloshed out of cars, and collected about the place because of appellant's negligence.

Viewing the evidence in favor of the verdict, we cannot say that as a matter of law or fact it does not lead, at least circumstantially, to the preponderant conclusion that Daley, while exercising ordinary care in the circumstances, slipped on the particular foreign substance, present because of appellant's negligence, of which substance he had inferior knowledge. All the evidence with reasonable deductions does not *demand* a finding for the defendant.

This case is not on a footing with *Apostol-Athanasiou v. White*, 176 Ga. App. 178 (335 SE2d 442), where as a matter of summary judgment, the landowner's knowledge of the particular presence of dog feces, concealed in the grass that plaintiff was hired to cut, was found not superior to that plaintiff. The jury in this case evidently concluded that Union Camp did have superior constructive knowledge of the continued existence of this substance on its cars and premises, through many complaints over a long period of time; and, that Daley did not have knowledge of this specific substance if it was in a crack of the running board, and did not assume that risk (see *Soto v. Roswell Townhomes*, 183 Ga. App. 286 (358 SE2d 670)). The standard for directed verdict requires a finding that the evidence *demands* a particular verdict, and this is difficult to find when the jury has concluded otherwise, for the jury's view demands we construe the evidence towards the verdict.

It follows that the verdict is not without evidence to support it,

and is not contrary to law or justice. It is very circumstantial, because it "only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed." OCGA § 24-1-1 (4). Nevertheless, it is sufficient to sustain the verdict. *Shepherd*, supra.

2. The trial court did not commit reversible error in allowing into evidence the "mysterious jar" of soapy material. The plaintiff did not offer it as the exact substance the plaintiff slipped in, which apparently would have been difficult to collect, but the plaintiff presented the stuff in the jar as a substance very like the one frequently found about Union Camp's yard. The fact that Daley testified he did not know exactly where the substance came from does not make it inadmissible. He testified only to its similarity to the substance found about the yard. It was relevant to show the nature of the foreign substance.

3. Appellant contends the trial court erred in failing to allow it to impeach Daley with a prior inconsistent statement. The fact is that Union Camp was allowed to attempt to earlier impeach Daley's statement that he did not know where the substance came from or how long it had been present. However, evidently Daley succeeded in convincing the jury his statements on the subject were not inconsistent, or was able to satisfy the jury by reasonable explanation. There was no error committed by the trial court.

4. Union Camp complains of the irrelevance (OCGA § 24-2-1) of the evidence of the substance being on the premises or running board of the tank car after Daley's fall. This evidence, in the context of this case, was not irrelevant. It was part of the circumstantial evidence tending to prove by inference the common presence of the substance, i.e., the common negligence of the appellant in allowing it to persist. As for its presence soon after Daley's fall, it was directly relevant to lend proof to its presence a short time before, where he fell.

5. The trial court committed no reversible error in failing to give three jury charges requested by the appellant.

To the extent these requested charges asserted the plaintiff could not recover if he had any knowledge whatsoever of a foreign substance or reason to expect its specific presence, these charges are wrong, because the defendant is not entirely relieved of liability if the plaintiff in some way contributed to his own injury. As for the other charges, the trial court charged on the plaintiff's necessity to exercise ordinary care, on his duty of avoidance, and as to the principles of superior and equal knowledge of the parties. Where the correct principle of law is charged, though not in the exact form requested (see *Locklear v. Morgan*, 129 Ga. App. 763, 767 (201 SE2d 163)), the trial court has not committed error.

6. Finally, Union Camp complains of error in allowing Daley's

counsel to set forth figures of Daley's damages not reduced to present cash value. There is no merit in this contention. The trial court clearly charged the jury as to its duty to reduce the loss of future earnings to present cash value, and told them how to do it. Appellant has not complained of this charge. We must therefore presume the verdict properly considered present cash value.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

ON MOTION FOR REHEARING.

This motion for rehearing is dismissed by reason of untimeliness.

*Motion for rehearing dismissed.*

DECIDED SEPTEMBER 14, 1988 —
REHEARING DISMISSED OCTOBER 13, 1988.

*Edward T. Brennan, G. Mason White*, for appellant.
*Billy E. Moore, Paul R. Bennett, John Wright Jones*, for appellee.