## 77370. THE STATE v. HUGHES.
### (377 SE2d 192)

CARLEY, Judge.

Officer J. R. Barner, while off-duty and operating his own vehicle, was forced off the road by the erratic driving of appellee. Officer Barner followed appellee's vehicle and observed appellee commit numerous traffic offenses. When appellee eventually pulled into the parking lot of an apartment complex and stopped, Officer Barner followed and pulled in behind appellee's vehicle. Officer Barner approached appellee and identified himself as a police officer. Officer Barner was asked to produce his identification and he complied. At the request of Officer Barner, by-standers telephoned 911 to relay the report that an officer was in need of assistance in the parking lot of the apartment complex and, within three or four minutes, other officers arrived at the scene. During those few minutes before the other officers arrived, Officer Barner asked appellee for his driver's license and he engaged appellee in general conversation. At one point, appellee suggested he was simply going to drive away, but Officer Barner informed him that he would not be allowed to do so. Officer Robert Littler, who had arrived at the scene in response to Officer Barner's request for assistance, asked appellee to perform field sobriety tests. Based upon appellee's performance of those tests and the information supplied by Officer Barner, Officer Littler placed appellee under formal arrest for driving under the influence. At no time prior to this formal arrest by Officer Littler was appellee ever advised of his *Miranda* rights.

Prior to trial, appellee filed a motion to suppress and a motion in limine. The trial court conducted a hearing and concluded that Officer Barner had "effected an arrest of [appellee] when he informed [appellee] that he could not leave the scene of the initial stop." Because appellee had not been given his *Miranda* rights at that time, the trial court granted appellee's motions, precluding the introduction at appellee's trial of any testimony concerning the conversation between appellee and Officer Barner which had occurred prior to the formal arrest and of any evidence of the field sobriety tests which had been conducted by Officer Littler prior to the formal arrest. The State appeals from this order of the trial court.

According to Officer Barner, he had followed the vehicle only to investigate the cause of appellee's erratic driving behavior and at no point had he arrested appellee. "[A] police officer may make 'an intrusion short of arrest' where he has 'specific and articulable facts' which reasonably warrant such intrusion." *Radowick v. State,* 145 Ga. App. 231, 233 (1) (244 SE2d 346) (1978). It is clear that Officer Barner had "specific and articulable facts" which warranted an investigation of appellee's erratic driving behavior. The trial court con-

cluded, however, that, notwithstanding Officer Barner's testimony, the investigation had become an arrest when appellee was informed that he would not be allowed to drive away from the scene. This conclusion is erroneous. A detention of appellee was obviously necessary in order that the investigation of his erratic driving behavior could be conducted. The authority to investigate "specific and articulable facts" without the authority to detain would be meaningless. "*Momentary detention and questioning are permissible* if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment." (Emphasis supplied.) *State v. Misuraca*, 157 Ga. App. 361, 364 (276 SE2d 679) (1981). Accordingly, the mere fact that appellee was detained from driving away from the scene of the authorized investigation of his erratic driving behavior would not authorize the conclusion that he was under arrest. "Although it is obvious that every arrest includes detention, not every detention is an arrest. . . ." *Radowick v. State*, supra at 238 (3). See also *Franklin v. State*, 143 Ga. App. 3, 5 (2) (237 SE2d 425) (1977), holding that "[a]n investigatory stop is not automatically an arrest simply because an officer is armed with a shotgun. [Cits.]"

The relevant inquiry is whether the detention to which appellee was actually subjected exceeded the limited scope of the detention to which the officers were authorized to subject him. "Although the original 'seizure' in the instant case was 'an intrusion short of arrest' ([cit.]), [we must determine whether] the subsequent actions of the police overreach[ed] the minimal intrusion authorized and convert[ed] the legal stop into an illegal arrest[.]" *Radowick v. State*, supra at 236 (3). Under the circumstances, Officer Barner was clearly authorized to effectuate "a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification, licensing of [the] driver and [the] vehicle if appropriate, a protective 'pat-down' of the outer surface of clothing for weapons if [he had] reasonable apprehension that [appellee was] armed or dangerous, and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop. [Cits.]" *Radowick v. State*, supra at 237 (3). The undisputed evidence of record shows that, at no point prior to appellee's formal arrest, was his detention converted into an illegal arrest. The mere fact that appellee was detained by Officer Barner for three or four minutes pending the arrival of the on-duty officers did not result in an arrest. See generally *Green v. State*, 168 Ga. App. 558 (309 SE2d 687) (1983). The officer who initiates an investigation is obviously in the best position to determine whether the circumstances confronting him warrant the presence of other officers. This is especially true where, as here, the officer is not on duty and may lack both

the means and the official authority to effect a formal arrest should that prove to be necessary. Moreover, appellee was not merely physically detained during the brief three or four minute period. Officer Barner used that period of time to identify appellee, to investigate appellee's driver's license and to engage in general conversation with appellee rather than to interrogate him. Such activities are clearly authorized during the brief investigatory stop of a motorist whose prior erratic driving could have been because of intoxication or could have been the result of a medical emergency or some other cause. Upon the arrival of Officer Littler, he took over the investigation and appellee was subjected to field sobriety tests. Such tests were reasonably related to those circumstances which had justified the initial detention of appellee. It was only *after* appellee had failed to pass the field sobriety tests and intoxication had been confirmed as the probable explanation for his erratic driving that he was formally arrested.

"When a violator is placed in custody or under arrest at a traffic stop the protection of *Miranda* arises; however, roadside questioning at a routine stop does not constitute such a custodial situation. [Cit.]" *Lebrun v. State*, 255 Ga. 406, 407 (339 SE2d 227) (1986). The undisputed evidence of record shows only that appellee was subjected to a routine momentary detention for the purpose of investigating a possible traffic violation. As a result of the ensuing investigation, appellant was formally arrested for driving under the influence. It follows that the trial court erred in granting appellee's motions to suppress the introduction of the evidence which the State had acquired in full compliance with all applicable constitutional principles.

*Judgment reversed. McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Beasley, J., concurs specially. Birdsong, C. J., Deen, P. J., and Sognier, J., dissent.*

BEASLEY, Judge, concurring specially.

I agree with the result reached by the majority but by a different route.

The trial court did not grant defendant's motion in limine and motion to suppress entirely but did suppress "all reference to the field sobriety tests . . . as well as the contents of all discussions between [the uniformed officer] and the defendant with the exception of the implied consent warnings and the defendant's response thereto." The basis was that defendant had not been advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). The State challenges the suppression.

The ruling as to "statements" could only have related to the defendant's faulty performance of the alphabet field sobriety test, in which he could not recite the alphabet all the way through. There was no evidence of any other incriminating statement made by defendant.

Barner testified that the only thing defendant spoke was a challenge to Barner's identity as a police officer and that he was going to leave. Littler did not testify about anything that defendant said other than what was expressly not suppressed and what defendant said in the alphabet test. So the question is reduced to whether the *Miranda* rights must be given before field sobriety tests are administered.

Not all in-custody statements are subject to *Miranda*. A volunteered statement, which is not the product of interrogation or its functional equivalent, would not be suppressible on this ground. *Rhode Island v. Innis*, 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980). Or a statement may not have been incriminating. *Hoffman v. United States*, 341 U. S. 479, 485-487 (71 SC 814, 95 LE 1118) (1951); *Axson v. Nat. Surety Corp.*, 254 Ga. 248, 250 (327 SE2d 732) (1985). The trial court would have had to know what the statement was and the circumstances under which it was made, to suppress it from introduction at trial. If some statement was in fact made but is not yet evidenced of record, then the ruling was premature.

As to the field sobriety tests, Officer Littler testified that in addition to the alphabet test, he gave several physical dexterity tests in which defendant was asked to perform specific movements using certain members of his body. Since he failed, these produced incriminating evidence.

As authority for his motions, defendant cited only *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984). Thus his *Miranda* challenge was based on the federal constitution alone. It would not reach the field sobriety tests, because only statements, and not acts, are subject to the warnings in order to be admissible under Fifth Amendment standards. *Schmerber v. California*, 384 U. S. 757, 761 (86 SC 1826, 16 LE2d 908) (1966).

As to the "statement" made in response to Officer Littler's request that he "recite the alphabet all the way from A through Z as clearly and plainly as possible," an application of *Berkemer* leads to the conclusion that the federal right against self-incrimination was not violated. Although *Berkemer* dealt with roadside questioning of a motorist detained pursuant to a traffic stop rather than the administration of a field sobriety test which involved speech, the rationale is fundamentally the same. It is the nature and the purpose of the detention and of the questions asked by the officer which primarily govern.

The Court stated: "It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Supra at 440. The Court recognized the distinction between the period of detention after the initial stop and the point at which the person is "subjected to restraints comparable to those associated with a formal arrest."

Supra at 441. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Supra at 441. In determining that question, the Court noted that the police officer asked some questions and requested the suspect to perform a simple balancing test. Thus the fact that a field sobriety test is administered does not render the detention one of "custody" or arrest.

The Georgia Supreme Court relied on *Berkemer* in concluding that, under federal law, "roadside questioning at a routine stop does not constitute such a custodial situation [as to require *Miranda* warnings]" *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986). In its analysis in *VanLoo v. State*, 187 Ga. App. 290 (370 SE2d 44) (1988), this Court regarded the field tests to have been performed prior to arrest. That is logical, since the field tests are an investigatory tool and their results may lead to a termination of the detention.

Under Georgia law, the affirmative acts requested of defendant as well as the alphabet statement would be subject to suppression if compelled. 1983 Ga. Const. Art. I, Sec. I, Par. XVI; OCGA § 24-9-20. A proper application of these provisions and the cases construing and applying them would not lead to suppression here either. As analyzed in *Montgomery v. State*, 174 Ga. App. 95, 96 (1) (329 SE2d 166) (1985), "OCGA § 24-9-20 is inapplicable . . . because appellant was not a person charged in a criminal proceeding at the time he attempted to complete the [field sobriety tests]." Nor was there in *Montgomery* any violation of the state constitutional right against self-incrimination. The factors found wanting in that case are also absent here.

There was thus no basis in law to suppress the evidence.

DEEN, Presiding Judge, dissenting.

Because the majority opinion either substitutes its factual determination for that of the trial court or reaches an erroneous legal conclusion that the off-duty police officer had not effected an arrest of the appellee, I must respectfully dissent.

At the hearing, the police officer testified on cross-examination as follows: "A. He said, 'I'm going to get back in my vehicle and leave.' And I said, 'No, sir. You're not going to do that.' If that's an arrest; that's an arrest. Q. Okay. Fine. So my question is as far as you were concerned he had broken the law; is that right? A. Yes, sir. He had broken the law. Q. He was not free to leave, was he? A. No, sir. I wouldn't have let him leave. Q. So for all intents and purposes, he was under arrest except you hadn't said the magic words. Is that basically what it amounted to? A. That is correct."

The majority opinion considers this case to be one merely involving a permissible investigatory stop. However, there appears to be little question that the off-duty police officer had concluded that the

appellee had committed certain offenses for which he should be arrested, and had summoned other police officers to complete the arrest process. In short, at the point in time when the off-duty police officer indicated that the appellee could not leave, his investigation was over.

If something looks like an arrest, sounds like an arrest, and acts like an arrest, it probably is an arrest, regardless of whether or not one uses the magic word itself. See *Chilivis v. Turner Communications Corp.*, 140 Ga. App. 648, 650 (231 SE2d 415) (1976) ("act, quack, and look like ducks"). The trial court's conclusion under its broad discretion that the off-duty police officer arrested the appellee is a realistic conclusion drawn from the evidence, and it is not clearly erroneous. Since a trial court's factual determinations after a suppression hearing must be accepted by the appellate courts where they are not clearly erroneous, *State v. Louis*, 185 Ga. App. 529 (364 SE2d 896) (1988), the trial court's order in this case should be affirmed.

I am authorized to state that Chief Judge Birdsong and Judge Sognier join in this dissent.

DECIDED DECEMBER 1, 1988 —
REHEARING DENIED DECEMBER 19, 1988 —

*Patrick H. Head, Solicitor, Beverly M. Hartung, Assistant Solicitor,* for appellant.
*Melvin S. Nash, Mary A. Stearns,* for appellee.