A89A0574. QUINONES et al. v. MAIER & BERKELE, INC. et al.

(385 SE2d 719)

BIRDSONG, Judge.

Appellants, Edwin Quinones (a/k/a Edwin Quinones Rivera) and Melquiades Gavillan, appeal the judgment entered in favor of appellee, Maier & Berkele, Inc. (hereinafter Maier & Berkele) and JoAnn Acree Jansen pursuant to the trial court's grant of appellee's motion for directed verdict.

Appellants entered Maier & Berkele so that appellant Quinones could get some gold bracelets repaired. Appellant Quinones was holding about 20 credit cards, making a stack of cards about 1 to 1-½ inches high, in one hand and several gold bracelets tied together by string in the other. Appellee Jansen, who was employed part-time as a security officer for Maier & Berkele, noticed the cards and initiated a conversation with the two men.

Appellee Jansen was regularly employed as a lieutenant for the City of Morrow Police Department. At the time of the incident, she was dressed in her police uniform and was wearing her city-issued revolver, badge, and walkie-talkie radio. As a city police officer, appellee Jansen was on duty at all times, even when not working normal shifts. In these latter circumstances, it was policy to request an on-duty police officer to come to the scene and handle the situation, except in emergency circumstances.

Appellee Jansen asked if she could see appellant Quinones' credit cards. The two appellants conversed in Spanish as to whether Quinones should allow Jansen to see his cards. When the cards were voluntarily shown to her, Jansen noticed that among the cards appellant had two cards from the same bank issued in two different last names.

Jansen could not recall the names on the card, but appellant Quinones testified, without contradiction, that the cards were issued to Edwin R. Quinones and Edwin Q. Rivera, respectively. Appellant Quinones testified that he explained to Lt. Jansen that in his home country, Puerto Rico, people used their first and their mother's and father's last name, but that banks make mistakes in issuing cards. Jansen asked appellant Quinones for his driver's license; Quinones responded that he had several but none on him as Gavillan was driving. The evidence is in conflict as to the exact number of driver's licenses that Quinones said he had. (Moreover, according to the posture of the evidence, at no time did Quinones expressly indicate to Jansen, or did Jansen inquire of Quinones, whether any of these licenses were currently valid or as to when and why they had been obtained.) Lt. Jansen then asked appellant Quinones where he worked. Quinones responded that he worked for the Department of Justice, but declined to reveal what his job was with that agency. The evidence is in conflict as to whether appellant Quinones flashed some type of badge and his work identification card (ID) during this part of the conversation. Conflict also exists as to when appellant Gavillan informed Jansen that he worked for the Department of Justice, and whether he flashed a badge at any time during the conversation between Jansen and Quinones.

At some point, appellants attempted to leave the store. As they were leaving, appellee Jansen demanded that they show some work identification to verify their status as law enforcement officers. The evidence is in conflict as to the manner in which this demand was made, whether the demand included an order for appellants not to leave the premises, and whether appellants were free to go at this point. Likewise, there is an evidentiary conflict as to whether appellants voluntarily agreed to remain near the first phone area in the store or were merely acquiescing to Lt. Jansen's directions. Appellants produced their work ID cards and Jansen took them. At some point, Jansen called for a back-up officer on her police radio, and an on-duty uniformed police officer arrived several minutes later. Appellant Gavillan testified that Jansen told the officer to "keep an eye on [appellants]"; and appellant Quinones testified that Jansen told the officer to "watch these individuals, not to leave." This testimony is not expressly contradicted in the record. Jansen then contacted the police station to make a "personal check," and called the federal prison where appellants worked. But the evidence is conflicting as to how many calls were made to the prison by Jansen.

The evidence is further contradictory as to when Jansen took possession of appellant Quinones' two credit cards and as to when exactly she called the "credit card company." When the "credit card company," Citibank, was contacted, appellee Jansen was informed

that they would handle the credit card matter. Appellant Quinones testified that subsequently Jansen returned with the cards and told him that he needed to call the bank about the cards, returned the cards, and then grabbed the cards again to make some notation from them. At some point after demanding work identification, Jansen took or was given both appellants' ID cards. Both appellants testified that they could not leave after Jansen had their official work ID cards in her possession. After expiration of a period of time, appellants' ID cards were returned and they were allowed to leave the premises. The evidence is in conflict whether appellee Jansen ordered appellants not to re-enter the premises.

This case was tried on appellants' averments of causes of action sounding in false imprisonment, violation of 42 USC § 1983 (violation of appellants' Fourth Amendment rights of privacy and freedom from unlawful seizure), libel, slander, and intentional infliction of emotional distress. *Held*:

1. Appellants assert that the trial court erred in directing a verdict for appellees at the close of appellants' case. "A directed verdict . . . is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." *Union Camp Corp. v. Daley*, 188 Ga. App. 756 (1) (374 SE2d 329); OCGA § 9-11-50 (a).

a. The trial court did not err in granting a directed verdict to appellees as to appellants' cause of action for intentional infliction of emotional distress. A directed verdict is proper whenever a plaintiff simply fails to prove his case. *Collins v. Ralston &c.*, 186 Ga. App. 583, 585 (367 SE2d 861). Appellants have failed to prove that appellees' conduct rose to the requisite level of outrageousness and egregiousness required by *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222, 225 (369 SE2d 541). Compare *Kornegay v. Mundy*, 190 Ga. App. 433, 434-435 (379 SE2d 14). Further, the severity of the emotional distress allegedly produced by the defendants' conduct is also a factor in determining liability for mental distress. *Moses*, supra at 226. The law will intervene only where the distress inflicted is so severe that no reasonable man could be expected to endure it. Id. It is for the court to determine whether on the strength of the evidence *severe* emotional distress can be found. Id. We find as a matter of law that appellants' alleged emotional distress does not meet the above severity requirement.

b. We find that any cause of action grounded on the torts of invasion of privacy has been waived by appellants' failure to argue this principle in their brief or to provide citations of authority pertaining thereto. Court of Appeals Rule 15 (c). Moreover, in Georgia the tort of invasion of privacy is actually comprised of four separate torts protecting different privacy interests. *Cabaniss v. Hipsley*, 114 Ga. App.

367, 370 (151 SE2d 496). The posture of the evidence in this case would demand a verdict for appellees as to any cause of action grounded on any one of these four torts. See generally *Cabaniss*, supra at 371-380; *Thomason v. Times-Journal*, 190 Ga. App. 601, 604 (379 SE2d 551).

c. The trial court did not err in granting a directed verdict for appellees in regard to causes of action sounding in libel and slander. Assuming arguendo the letter in question here was mailed and read by appellants' supervisor, Lt. Howington, to whom it was addressed, this is not enough to present a jury question on this issue. " 'In order to effect the publication of a libel there must be a reading of it. Not only that, there must be an understanding of its meaning by the person reading it. . . .' " (Emphasis deleted.) *Sigmon v. Womack*, 158 Ga. App. 47, 50 (279 SE2d 254). The record, especially when viewed in support of the trial court's verdict, contains no probative evidence that this letter when read was understood as to its significance. "Thus, even assuming the evidence authorized a finding that the [letter] was read by someone, there was no evidence that it was 'communicated' to [Lt. Howington] this [apparent] sole reader in a sense libelous to [plaintiffs]. 'The plaintiff has the burden of proof on the question of the publication of the defamatory matter. To satisfy this burden, it is necessary that he show not only that the defendant spoke or wrote or otherwise prepared the defamatory matter or made it available to a third person, but also that the third person *understood its significance*.' " (Emphasis supplied.) *Sigmon*, supra at 50. Accordingly, appellants have failed to establish that any publication of the allegedly libelous letter occurred.

Regarding the dissent's express assertion that "there was no real dispute at trial" regarding the issue of the receipt, reading and understanding of the letter, we disagree. However, assuming arguendo, no such dispute existed, we by our analysis have shown that this issue should, as the trial judge did, be resolved in favor of all appellees. It is a well-settled rule of law in Georgia that " '[a] correct decision of a trial court will not be reversed, regardless of the reasons given therefor.' " *Tony v. Pollard*, 248 Ga. 86 (1) (281 SE2d 557); *National Consultants v. Burt*, 186 Ga. App. 27, 33 (366 SE2d 344), writ vacated, 258 Ga. 645 (374 SE2d 532). The dissent has, in part, relied upon certain hearsay testimony, regarding what one of the appellants testified his supervisor had advised him concerning receipt of the letter and its referral to the captain. Suffice it to say that "[o]rdinarily hearsay testimony is not only inadmissible but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact." *Higgins v. Trentham*, 186 Ga. 264 (1) (197 SE 862); *Acme Fast Freight v. Southern R. Co.*, 67 Ga. App. 885, 887 (21 SE2d 493).

Moreover, regarding causes of action grounded in both libel and slander, we find that no publication occurred. "A communication made by a public officer in discharge of his [or her] official duties to another or to a body of officers having a duty to perform with respect to the subject matter of the communication does not amount to a publication within the meaning of the law of defamation." 53 CJS 98, Libel & Slander, § 50A; cf., *Kurtz v. Williams*, 188 Ga. App. 14 (3) (371 SE2d 878) (communications between group members).

The letter was addressed to appellants' principal supervisor; and, the evidence is uncontradicted that the letter was written at the federal supervisor's request by Jansen on official stationery of the Chief of Police of the Morrow Police Department and signed with Jansen's official title as "Lt. Jo Ann Acree Jansen, Morrow Police Department." Regarding the telephone call or calls to the penitentiary, the evidence shows that Jansen identified herself as a police officer and, before uttering the statements in question, specifically requested to speak to the officer in charge of appellants and expressed her intention to submit a "verbal report" concerning appellants' conduct. The record contains no evidence to refute that Jansen was then acting as a public officer in discharge of her official duties *on the particular occasions when* she made the phone call or calls and wrote and mailed the letter. " '[A]ll law enforcement officers have the general duty to enforce the law and maintain the peace. *They carry this duty twenty-four hours a day, on and off duty.*' " (Emphasis supplied.) *Carr v. State*, 176 Ga. App. 113 (1) (335 SE2d 622). A law enforcement officer's duties inherently include the duty to report duly the perceived improper acts or omissions of other law enforcement officers. The timely performance of this duty clearly is in the public interest.

d. Regarding the causes of action sounding in false imprisonment and for unlawful seizure of appellants under the Fourth Amendment in violation of 42 USC § 1983, we are satisfied that the posture of the evidence, together with any inferences that reasonably might be drawn therefrom, does not demand a certain verdict in favor of either appellants or appellee Jansen. See generally *Union Camp*, supra. Thus, we find it is for the jury to resolve whether appellee Jansen is liable to either or both of the appellants as averred in the charges pertaining to either of these causes of action.

2. As to appellee Maier & Berkele, however, a different result obtains. In *Welton v. Ga. Power Co.*, 189 Ga. App. 17 (1) (375 SE2d 108), we adopted the following legal principles: " ' "(a) servant may also be a special officer of the law, and the latter fact does not relieve the master from liability for his acts within the scope of his authority as servant. If he commits a tort in the discharge of duties owing to the master, the latter will be liable for his servant's tort. *If the servant commits a tort as a police officer, the master will not be liable, unless*

*it was done at his direction.*" (Cit.) However, even if a police officer was on duty with the city when the alleged tort occurred, it will not preclude a recovery if at the time he could have been acting as agent for and in behalf of his off-duty employer who is sought to be held liable. [Cit.]' " (Emphasis supplied.) Thus, the question of Maier & Berkele's liability for false imprisonment via Jansen's conduct " 'comes down to one of looking into the capacity in which [Jansen] was acting when the alleged tort occurred.' " *Welton,* supra at 19. We need not resolve at this time whether Jansen detained or arrested appellants, if either (compare *State v. Hughes,* 189 Ga. App. 671 (377 SE2d 192) with *DiSanti v. State,* 190 Ga. App. 331 (1) (378 SE2d 729)). Suffice it to say, there exists absolutely no evidence whatsoever that such conduct was accomplished in any manner at the direction of or according to the policies and operating procedures of Maier & Berkele or otherwise accomplished within the scope of authority Jansen had as a part-time security officer. Accordingly, the trial judge did not err in granting directed verdict against appellants and in favor of Maier & Berkele as to false imprisonment.

In view of the position asserted by the dissent, the following facts warrant discussion. Officer Jansen did not testify regarding her instructions and duties as a part-time Maier & Berkele security officer; neither did any managing official or employee of Maier & Berkele testify. Further, no records or reports of Maier & Berkele were introduced in evidence; thus, the procedures and policies, if any, of Maier & Berkele in regard to the scope of duties and authorized conduct of its security guards were *not* in evidence. In fact, the only testimony relevant to this issue given by Jansen, regarding her part-time employment in 1985 with Maier & Berkele, occurred when she testified: "I was working there as a *police* security officer for Maier & Berkele" and affirmatively responded to the question: "You were there to provide security for Maier & Berkele, is that correct?" (Emphasis supplied.) Jansen also testified that she was a police lieutenant, on-duty 24 hours a day, pursuant to a policy of the City of Morrow. Pursuant to this policy, Morrow police officers are required to enforce the law during times that they are not working normal shifts; "but where possible [off-duty officers are] to request an on-duty officer to come to the scene to handle" the violation, except in emergency conditions, when they are to act in their law enforcement capacity. The facts in this case reflect that the actions Jansen took were compatible with this asserted city policy. *However, the issue requiring resolution in this instance is, does a jury question exist whether Jansen was acting within the scope of her employment with Maier & Berkele in regard to the false imprisonment claim.* We believe not. Assuming arguendo that Jansen was hired by Maier & Berkele as a security officer, exactly what type of duties was she required and *authorized* to

perform in such capacity? The record does not create any jury issue in regard to Maier & Berkele. As previously stated, a directed verdict is proper whenever a plaintiff simply fails to prove his case. *Collins*, supra at 186 Ga. App. 585.

The evidence in this case fails to show that the action Jansen took against appellants was effected pursuant to either "a direct order from [Maier & Berkele] or a custom or policy instituted by [it]. Since there is no showing of direct involvement by [Maier & Berkele, it] cannot be liable under § 1983." *Howell v. Tanner*, 650 F2d 610 (5) (5th Cir.); *Shepard v. Byrd*, 581 FSupp. 1374 (23) (USDC, N.D. Ga.) "Under section 1983 it is clear that [Maier & Berkele], as a corporation, cannot be held liable based on the employer-employee relationship between it and [Jansen], for section 1983 will not support a claim based on a *respondeat superior* theory of liability." *Shepard*, supra at 1390 (21); see generally 15 AmJur2d, Civil Rights, § 20.5.

*Judgment affirmed in part and reversed in part. Carley, C. J., McMurray, P. J., Banke, P. J., Sognier and Beasley, JJ., concur. Deen, P. J., Pope and Benham, JJ., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

I concur fully with Divisions 1(a), 1(b), and 1(d) of the majority opinion. With regard to the remainder, however, I must respectfully dissent.

1. With regard to the appellants' claim for libel and slander, the record does not support either of the majority opinion's conclusions as a matter of law that no publication occurred and that Jansen was acting as a public officer in discharge of her official duties at the time she telephoned the appellants' supervisor and wrote the supervisor in confirmation of that telephone conversation.

Concerning the publication of the alleged libel, there was no real dispute at trial that Jansen's letter was received and read by the appellants' supervisor. Jansen herself testified about her phone call to the appellants' supervisor, and that she mailed the letter to that supervisor at his request. The contents of the telephone conversation and the letter were the same. One of the appellants testified that the supervisor advised him that the matter would have to be referred to the captain in view of the receipt of Jansen's letter. The fact that the supervisor felt compelled to refer the matter to the captain would support a finding that he understood the letter to cast aspersions upon the conduct of the appellants.

The majority opinion disregards this evidence by erroneously categorizing it as hearsay. As emphasized by the majority opinion, in order to effect the publication of a libel, "there must be an understanding of its meaning by the person reading it . . ." *Sigmon v. Womack*,

158 Ga. App. 47, 50 (279 SE2d 254) (1981). In the instant case, the supervisor's act of referring the matter to the captain most certainly reflected his personal understanding of the letter; in other words, the supervisor's conduct, so indicative of his understanding or state of mind, was necessarily a matter concerning which the truth must be found. Under this circumstance, the appellant's testimony recounting his conversation with the supervisor, which explained the supervisor's conduct, was admissible not as hearsay but as original evidence. OCGA § 24-3-2; *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984).

Neither Jansen nor Maier & Berkele really questioned the supervisor's receipt and reading of Jansen's letter; in moving for directed verdict on the slander and libel claim, Maier & Berkele merely contended that any communication by Jansen had been unauthorized, and Jansen asserted solely that the letter was not defamatory. There is evidence of the publication of the alleged slander and libel, and no real dispute over that fact, and the majority opinion mistakenly concludes otherwise.

In the letter, Jansen complained to the supervisor that the appellants had been uncooperative and belligerent, and that they had flashed badges during their encounter. She concluded the letter by expressing her disapproval of such conduct which she considered to be unbecoming of employees of the Atlanta Federal Penitentiary. Statements which tend to injure one in his trade or occupation may be libelous. *Walker v. Sheehan*, 80 Ga. App. 606 (2) (56 SE2d 628) (1949). In writing the letter in the instant case, Jansen served no general duty to enforce the law, and specifically did not further any inherent duty of a law enforcement officer to report improper acts, to the extent that a directed verdict was proper, because the evidence of the alleged improper act, i.e., flashing of the badges, was conflicting. In short, the evidence and circumstances in this case would authorize a finding that Jansen's communication with the appellants' supervisor served no law enforcement purpose, but rather was intended to cause the appellants some degree of trouble.

2. I can accept the holding of the majority opinion, and the persuasive authority relied upon by it, that the appellants' § 1983 claim against Maier & Berkele must fail because Section 1983 will not support a respondeat superior theory of liability. However, I cannot agree with the majority opinion's finding that Jansen's detention of the appellants was undertaken solely in her capacity as a police officer, and that Maier & Berkele was thus entitled to directed verdict on the claim for false imprisonment.

In *Welton v. Ga. Power Co.*, 189 Ga. App. 17, 20 (1) (375 SE2d 108) (1988), relied upon by the majority opinion, the police officer moon-lighting as a security guard was hired, not to investigate offenses against the company or assist in apprehending suspected

criminals, "but rather to afford security to company employees, primarily going to and from parking areas to the company offices . . ." In the instant case, by comparison, Jansen was hired as a deterrent to criminal activity within the store. As she testified at trial, Jansen's job was "of being seen, of hopefully being a deterrent to anyone that might have other than straight motives when they came in." The evidence would authorize a finding that Jansen detained the appellants ostensibly in the process of doing exactly what Maier & Berkele employed her to do, and the trial court erred in directing verdict for Maier & Berkele on the false imprisonment claim.

I am authorized to state that Judge Pope and Judge Benham join in this opinion.

DECIDED JULY 14, 1989 —
REHEARINGS DENIED JULY 31, 1989 — 

Robert M. Goldberg, Michael E. Bergin, for appellants.

Lamar, Archer & Cofrin, David W. Davenport, Norton, Pennington & Goetz, Charles M. Goetz, Jr., for appellees.