408 S.E.2d 630

**Mary Catherine LUSK, guardian of Stephen Lusk, A juvenile under the age of eighteen, Plaintiff,**

v.

**IRA WATSON COMPANY, d/b/a Watson's Backroom, A Delaware corporation authorized to do business in West Virginia, Defendant.**

**No. 19894.**

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided July 18, 1991.

Richard G. Rundle, Pineville, for plaintiff.

Martin R. Smith, Jr. and Luci R. Wellborn, Charleston, for defendant.

WORKMAN, Justice:

The United States District Court for the Southern District of West Virginia, Bluefield Division, certified the following question to this Court:

Whether an owner of merchandise, his employee having called the police to the premises to investigate a possible shoplifting, is liable for an unreasonable detention of a suspected shoplifter by local police officers under West Virginia Code § 61–3A–4?

Upon review of the arguments of the parties and the records submitted to this Court, we find that an owner of merchandise so situated is not liable for an unreasonable detention of a suspected shoplifter by local police officers.

I

On March 30, 1989, the plaintiff Stephen Lusk, age twelve at that time, was a customer of the defendant Ira A. Watson Company, d/b/a/ Watson's Backroom, also known as Watson's (hereinafter referred to as Watson's) at Welch, McDowell County, West Virginia. Employees of Watson's submitted affidavits indicating that they observed Mr. Lusk behaving in what they determined to be a suspicious manner in the men's department of the store. Specifically, the employees observed Mr. Lusk wandering through the store and walking back and forth in front of a sales rack containing biker shorts. Carla Sue Colombo, a sales associate at Watson's, submitted an affidavit indicating that she observed Mr. Lusk remove a pair of biker shorts from a hanger. She looked away from Mr. Lusk for a moment to speak with a customer and then observed Mr. Lusk walking out of the men's department. Ms. Colombo indicated that the empty hanger was on the rack and that she did not see the biker shorts.

Judy Wyatt, another sales associate at Watson's, also submitted an affidavit indicating that she observed Mr. Lusk "behaving mischievously, holding his arm tightly to his side, looking around the store nervously and whispering to his companion while staring at the rack with the biker shorts." Ms. Wyatt counted the biker shorts on the sales rack after Mr. Lusk left the men's department and discovered that one pair of shorts was missing. Ms. Wyatt then instructed Ms. Colombo to continue to observe Mr. Lusk's activities, and Ms. Wyatt telephoned the Welch Police Department to notify them of a possible shoplifter.

Upon the arrival of Welch Police Department Officers William Worley and Richard Van Dyke, Watson's assistant manager Sandra Proffitt informed the officers that merchandise was discovered missing and that it was believed that the loss of merchandise was the result of shoplifting. Ms. Proffitt further informed the officers that Watson's employees had not actually observed Mr. Lusk take or conceal any merchandise.

The officers then escorted Mr. Lusk to a stockroom on the third floor of the store and questioned him concerning the possible shoplifting of merchandise. When Mr.

Lusk inquired as to why he was taken to the stockroom, he contends that he was informed that he should know and that someone from Watson's had called the police and stated that there had been a possible shoplifting. The officers then asked Mr. Lusk what he knew about a pair of stolen biker shorts. Mr. Lusk informed the officers that he knew nothing about any such biker shorts and that he did not have in his possession anything belonging to Watson's. The officers then directed Mr. Lusk to remove his jacket, raise his shirt, and remove his pants. Upon finding no stolen merchandise, the officers informed Mr. Lusk that he was free to leave the premises. Approximately twenty minutes elapsed from the time the employees observed suspicious behavior by Mr. Lusk until he was released by the police. The employees of Watson's did not participate in the investigation of suspected shoplifting and were not present during any action taken by the officers.

A civil action was instituted in the Circuit Court of McDowell County, West Virginia, by the plaintiff Mary Catherine Lusk, as guardian of Stephen Lusk, against Watson's. The action was removed to the United States District Court for the Southern District of West Virginia by reason of diversity of citizenship. The complaint asserts that Mr. Lusk was subjected to embarrassment, humiliation, and abuse and that he has "suffered great mental suffering, nervousness, and distress...." Watson's moved for summary judgment based upon its claim of immunity from suit pursuant to W.Va.Code § 61–3A–4 (1989)[1] contending that its employees had reasonable grounds to believe it necessary to notify the police of a suspected shoplifting and that it is not liable for any actions of Officers Worley or Van Dyke in their detention

of Mr. Lusk. The question set forth above was subsequently certified to this Court.

## II

In discussing W.Va.Code § 61–3A–4 in *State v. Muegge*, 178 W.Va. 439, 360 S.E.2d 216 (1987), we explained the following:

> The primary purpose of this statute is to temper the common law's harsh rule of civil liability in actions for false imprisonment. At common law, a merchant detaining someone he suspected of stealing his goods was subject to liability if it turned out the accused party was not guilty.

178 W.Va. at 441, 360 S.E.2d. at 218.

In contrast to common law, W.Va.Code § 61–3A–4 provides that a merchant cannot be deemed liable to the person detained so long as the merchant had a "reasonable ground to believe that a person has committed shoplifting ... [and] detain[ed] such person in a reasonable manner and for a reasonable length of time not to exceed thirty minutes...." The allegation of misconduct in the present case is directed toward the actions of the police officers after they arrived on the premises, rather than toward any specific action of the merchant or its employees. This incident occurred in two separate, identifiable stages. First, the suspicions of the employees prompted them to notify the police; and second, the police arrived and proceeded to detain and interrogate the suspect.

The certified question before us addresses the potential liability of the merchant for the actions of the police. While this Court has not previously addressed this issue, the question of merchant liability for police action has been addressed by various other jurisdictions. In *Quinones v. Maier & Berkele, Inc.*, 192 Ga.App. 585, 385 S.E.2d

1. West Virginia Code § 61–3A–4 provides the following:

An act of shoplifting as defined herein, is hereby declared to constitute a breach of peace and any owner of merchandise, his agent or employee, or any law-enforcement officer who has reasonable ground to believe that a person has committed shoplifting, may detain such person in a reasonable manner and for a reasonable length of time not to exceed thirty minutes, for the purpose of investigating whether or not such person has committed or attempted to commit shoplifting. Such reasonable detention shall not constitute an arrest nor shall it render the owner of merchandise, his agent or employee, liable to the person detained.

719 (1989) *cert. vacated,* 259 Ga. 875, 390 S.E.2d 594 (1991), a case quite similar to the present one, customers filed a civil action for defamation, false imprisonment, intentional infliction of emotional stress, and wrongful seizure against the merchant and the police officer who questioned and allegedly detained the customers.[2] A judgment in favor of the merchant and the officer was rendered in the lower court, and the customers appealed to the Court of Appeals of Georgia. The court determined that the merchant could not be held responsible for the actions of the officer because the evidence was insufficient to establish that the officer acted "in any manner at the direction of or according to the policies and operating procedures of ... [the store]." *Id.* 385 S.E.2d at 723.

Similarly, in *Welton v. Georgia Power Co.,* 189 Ga.App. 17, 375 S.E.2d 108 (1988), a robbery suspect brought a false imprisonment claim against a power company when agents of the power company caused him to be detained as a robbery suspect. The court held that the company was not liable for false imprisonment. 375 S.E.2d at 110–11. Again, the police officer involved worked as a part-time security officer for the power company. The court examined the capacity in which the officer was working when the alleged false imprisonment occurred and determined that the officer was on duty as a police officer twenty-four hours a day, was vested with authority to make arrests by the City of Atlanta, and had no authority to make arrests on behalf of the power company. *Id.*

The appellant had also argued that the power company was liable for false imprisonment on the theory that the police officer had acted under the direction and control of power company agents. *Id.* at 111. The court found that the evidence did not support the contention that power company agents instigated or directed any detention. The court explained the distinction between direct involvement in instigating criminal proceedings by police officers and merely relaying facts to police officers who subsequently take independent action. *Id.* The potential liability of the owner or merchant hinges upon the category into which the owner or merchant activity falls. *Id.* (citing *Baggett v. National Bank & Trust Co.,* 174 Ga.App. 346, 347, 330 S.E.2d 108, 109–10 (1985)).

In *Troupe v. Superx Drugs Corp.,* 659 S.W.2d 276 (Mo.App.1983), the Missouri Court of Appeals held that the involvement of the merchant in the actions of the police officers was significant enough to provide a foundation for liability of the merchant. The Missouri rule on this issue was reiterated as follows:

'If the defendant directs a police officer to take the plaintiff into custody, he is necessarily liable to respond in damages for a resulting false imprisonment; but if, to the contrary, the defendant merely states the facts to the officer, leaving it with him and his superiors to act or not, as they see fit, the defendant is not liable.'

659 S.W.2d at 279 (quoting *Vimont v. F.S. Kresge Co.,* 291 S.W. 159, 160 (Mo.App. 1927)).

The *Troupe* court also explained that "[t]here is no fixed test to measure acts constituting instigation of an arrest. Each case necessarily depends upon its own particular facts and circumstances." *Id.* The court found that the facts of the *Troupe* case supported the conclusion that the agent of the merchant not only "instigated the plaintiff's arrest but further that defendant's agents actually ordered or directed the plaintiff's arrest." *Id.* The employees in *Troupe* did more than simply summon the police to the store and report the facts as they had unfolded. The security officer employed by the merchant identified the plaintiff to the police as the person he had chased the previous day, the security officer had multiple dialogues with the police officers at the scene of the arrest, and the store manager testified that the security

---

2. The police officer in *Quinones* also served as a part-time security officer for the merchant. 385 S.E.2d at 720. The court found, however, no evidence indicating that the police officer was acting within the scope of authority as a part time security officer. The officer was found to have acted only in the capacity of a city police officer. *Id.* at 723.

officer had informed him " 'that he had called the police and had ... [the plaintiff] arrested for the incident that happened a day or two before.' " *Id.* Consequently, the extensive involvement of the merchant's agent with the police activity supported a finding of merchant liability.

■ We concur with the reasoning of these cases and hold that absent evidence that the police officers in the present case acted at the direction of the merchant, the merchant cannot be deemed liable for any actions taken by the officers. The act of summoning police officers to the scene of a reasonably suspected shoplifting is not sufficient to invoke liability upon the merchant for any subsequent independent actions of the police officers. Watson's did not independently detain Mr. Lusk; he was only detained by police officers once those officers arrived. Thus, no question can be raised regarding the reasonable nature or length of detention by the merchant. To attempt to hold Watson's liable for actions committed independently by the police officers is inappropriate and inconsistent with the object of W.Va.Code § 61–3A–4.

■ Based upon the foregoing, we answer the certified question in the negative, and conclude that an owner of merchandise, his employee having called the police to the premises to investigate a possible shoplifting, is not liable for any unreasonable detention of a suspected shoplifter by local police officers under W.Va.Code § 61–3A–4. Having answered the certified question, we order this case dismissed from our docket.

Certified question answered and dismissed.